STATE of Missouri, Respondent,

v.

Frank HICKS, Appellant.

No. 58307.

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1974.

John C. Danforth, Atty. Gen., Preston Dean,, Asst. Atty. Gen., Jefferson City, for respondent.

Frank R. Fabbri, III, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for appellant Frank Hicks.

HOUSER, Commissioner.

This is an appeal from a judgment convicting Frank Hicks of murder in the first degree and sentencing him to life imprisonment. This Court has jurisdiction under its order of April 9, 1973.

This judgment and sentence must be reversed for error in overruling appellant's motion to suppress and admitting in evidence certain articles of personal property belonging to the deceased, because they were obtained as a result of a warrantless and illegal search of the person of appellant.

Alberta Catchings was found dead, lying in a pool of blood in the kitchen of her apartment at 4106 Enright Avenue. Her body was discovered by a friend at 6:40 o'clock on the morning of April 29, 1970. The police were called, the body was removed to the morgue, and an investigation was commenced. Prior to that date appel-

lant had been living at the home of his mother at 4011 Enright Avenue. About 1 p. m. on that date Detective Newsom made a telephone call to Willie Mae Hicks, appellant's mother, asking for permission to come to the home and talk to her son Frank "because Frank had been in an institution." Detective Newsom was aware of appellant's history of "having been at Fulton and having psychiatric problems"; knew that he had been committed by a court to the Fulton institution, from which he had been recently released, and that appellant had a history and record of previous arrests. Sergeant Rowane of the St. Louis Police Department had informed the officers that Frank Hicks was "a prime suspect"; that he had "recently got out of the penitentiary." (He served time for second degree burglary. Nothing indicates that the officers knew the nature of the crime for which he was imprisoned.) Pursuant to the telephone call Detectives Newsom and McCarty appeared at Willie Mae Hicks' apartment at 4:30 that afternoon. She and appellant and several others were present. Detective Newsom testified that "armed with some information that we had received beforehand" (the nature of which was not revealed) the officers went to 4011 Enright for the purpose of picking up *appellant and taking him downtown to the central district police station for questioning.* Detective McCarty testified that the officers took appellant to the homicide office as a suspect in the murder of Alberta Catchings; that at the time they picked up appellant the officers had already formed the intention to book him for homicide. Upon their arrival the officers "patted down" appellant, i. e., made "a light search" to see if he had a gun, but did not conduct a thorough search of his person. The officers arrested him, took him into custody, and informed him that they were going to take appellant downtown for questioning. There was some excitement. His mother and aunt did not want him to go. Appellant "was fighting * * * raising Cain, * * * saying he didn't do it * * *," but the officers handcuffed appellant's hands behind him and he "had to go." Arriving at the downtown central district police station at approximately 5 p. m. the officers took appellant directly to the interrogation room, advised him of his rights, and informed him that he was a suspect in the murder of Alberta Catchings. After ten or fifteen minutes of questioning appellant stated that Alberta was his cousin and that he had visited her in her apartment the previous night. The officers gave two different reasons for thereupon conducting a search of appellant's person. Detective Newsom testified that it was because appellant was giving evasive answers. Detective McCarty testified that they searched him "for weapons." The State gives a third reason, i. e., that it was routine inventory search customarily made at time of booking. The search, made without a warrant, was conducted not at the place of original arrest but at headquarters, and not at the booking desk but in the homicide office. In appellant's pants pocket the officers found some costume jewelry, a pocketknife, a lady's wristwatch, a lady's ring, and a tie clasp. Detective Newsom testified that he did not know at that time to whom the costume jewelry belonged. Appellant told the officers that a girl friend had given the costume jewelry to him "sometime back" but refused to name the girl friend. After the search appellant was arrested for the murder of Alberta Catchings. After an hour or so expired he was taken to another part of the building, where he was booked for murder at about 6:30 p. m. The articles removed from appellant's pocket (except for the lady's ring and pocketknife) were identified at the trial as the property of the deceased, and all of these articles were admitted in evidence.

The State concedes that appellant was arrested at his mother's apartment, when he "struggled and was handcuffed," and seeks to justify the warrantless search of appellant's person at the police station and the seizure of the articles found in his pocket as "an inventory search" incident to a valid arrest, asserting that there was

probable cause to arrest appellant at his mother's apartment because (1) appellant had a history of prior arrests and had just been released from the state hospital, where he had received psychiatric treatment; (2) appellant lived near the victim's apartment; and (3) appellant became excited, struggled apparently in an attempt to flee when the police told him they would like to ask him some questions concerning Alberta Catchings' death.

▆▆▆ Whether the arrest at the apartment of appellant's mother was lawful depends upon whether the officers at that moment had reasonable grounds to believe that appellant had committed the murder. State v. Tomlin, 467 S.W.2d 918 (Mo. 1971); State v. Gant, 490 S.W.2d 46, 48 [4] (Mo.1973); State v. Henderson, 510 S.W.2d 813, 818 [2] (Mo.App.1974). There is no question that at that time the officers knew that a murder had been committed by someone; where the murder was committed, and they knew (1) and (2) above. They had been informed by Sergeant Rowane that appellant had recently been in the penitentiary and that the sergeant felt that appellant was a prime suspect. The basis for the sergeant's suspicion was not revealed. If his suspicion was based upon information received from an informer there is no showing as to the reliability of such informer or as to the credibility of such information. That appellant was a known police character was a factor which the officers could properly weigh in making their determination, State v. Kelley, 473 S.W.2d 707, 710 [2] (Mo. 1971), but the fact that appellant had a previous criminal record did not justify his arrest. State v. Cuezze, 249 S.W.2d 373, 376 [3] (Mo.1952). That appellant had a history of psychiatric problems was also a factor to be considered, but these factors alone were insufficient to justify his arrest for this murder. They would give rise to nothing more than the barest suspicion of

appellant's connection with the crime. The requirement of probable cause can never be satisfied with a bare suspicion of guilt. State v. Goodman, 449 S.W.2d 656, 660 [5] (Mo.1970); State v. Whorton, 487 S.W.2d 865, 867 [3] (Mo.1972). No other facts or circumstances from which the arresting officers might infer a nexus between appellant and the murder were shown to have been known to the officers.[1] They had no description of the murderer; no information as to his identity, sex, or movements; no evidence of their knowledge of appellant's relationship with the victim, or even that he was acquainted with her; no evidence of previous threats or trouble between them; no statements from participants or witnesses; no fingerprints; no knowledge of any physical evidence obtained either within or without the victim's apartment indicating that any particular person had committed the crime. At that time they did not know that appellant had visited the victim at her apartment the night before. There is nothing to show that the officers knew of appellant's whereabouts during the preceding 24 hours. They were not then apprised of the fact that appellant had on his person and in his room various articles of personal property and effects missing from the victim's person and apartment. The subsequent discovery, on appellant's person and in his room, of jewelry, personal effects, a jewelry box, radio, etc. belonging to the victim cannot be relied upon to justify the arrest. After-the-event justification is not permissible. State v. Seymour, 438 S.W.2d 161, 163 [2] (Mo.1969).

▆▆▆ The State may not rely upon (3) above as a factor bearing on the question of probable cause. Appellant's reaction when informed that he was being taken to central police headquarters for questioning occurred *after*, not before, the arrest. Indeed, the determination to arrest appellant and take him to headquarters for question-

---

1. As, for instance, in Shorey v. Warden, Maryland State Penitentiary, 401 F.2d 474, 477–478 [6] (4th Cir. 1968), cert. den., 393 U.S. 915, 89 S.Ct. 241, 21 L.Ed.2d 201, and Ricehill v. Brewer, 459 F.2d 537, 539–540 [1, 2, 3] (8th Cir. 1972).

ing had been made prior to the time the officers appeared at 4011 Enright; according to the officers their purpose in going there was to pick up appellant for interrogation. They had formed the intention of booking him for murder before they arrived at the apartment. Incidentally, although appellant's reaction has no bearing in point of time on the question of reasonable belief, the State exaggerates the nature of appellant's reaction. There is no evidence that appellant "struggled apparently in an attempt to flee * * *," as the State contends. Although he was "fighting," "raising Cain" and protesting his innocence, he was not attempting to flee. His reluctance to go downtown for questioning is as consistent with innocence as with guilt, under the circumstances shown. Nor may the arrest be justified on the ground that it was an arrest for investigation. An arrest not on a legal charge but for investigation, simply to afford the police officers time and opportunity to investigate and amass facts sufficient to constitute probable cause, is not lawful. Staples v. United States, 320 F.2d 817 (5th Cir. 1963) ; United States v. Martinez, 465 F.2d 79, 82 [4] (2nd Cir. 1972).

■ Furthermore, as pointed out by appellant, he was not searched at the scene of his arrest (beyond a mere "pat down") —the thorough search of his person was made at another place—not until after he had been transported to the downtown district headquarters police station, and after fifteen minutes of interrogation. " 'Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v. United States, supra, 269 U.S., [20] at 31, [46 S.Ct. 4, at 5, 70 L.Ed. 145].' " Bowling v. United States, 122 U.S.App.D.C. 25, 350 F.2d 1002, 1003 [4] (1965).

■ Nor may this search be justified as an inventory search. As conceded by the State, the basis for an inventory search is a preceding valid arrest based upon probable cause, which was lacking here.

■ Citing Kaufman v. United States, 453 F.2d 798 (8th Cir. 1971), the State contends that in any event appellant was not prejudiced by the admission of these articles in evidence "since other items which were equally damaging to appellant's case were introduced into evidence." Kaufman does not support this theory of harmless error, and we find no justification for the State's contention. This was a circumstantial evidence case. The finding in accused's pocket of articles of a personal nature belonging to the victim of a murder committed the previous night was an incriminating circumstance which necessarily had a powerful effect upon the jury. It was not merely cumulative evidence on a side issue without material effect upon the jury but was highly persuasive evidence on a vital issue which doubtless affected the verdict. We must conclude that the arrest at the apartment of appellant's mother without a warrant was not lawful; that the subsequent search of his person at headquarters was not authorized as an incident to a lawful arrest, and that the motion to suppress the articles obtained from the search of his person should have been sustained.

■ We consider appellant's second point because it will necessarily arise on retrial. This involves the propriety of the court's action in overruling appellant's motion to suppress articles of personal property belonging to the victim, found in appellant's room by his brother William, brought to the attention of the officers by the brother, seized by the officers without a search warrant, and introduced in evidence at the trial.

There was evidence that appellant was not at his mother's apartment during the night and early morning during which the homicide took place; that appellant came home at sunup; that he and his mother had difficulty due to a toilet overflowing

as a result of which appellant apparently decided to move out of his mother's apartment; that later that morning he rented a room at 4339 Enright; that brother William saw appellant that morning at the new location; that after appellant's arrest William and another relative went to appellant's room, searched it and found various articles. William collected these articles and placed them on the bed, and then called Detective McCarty, pursuant to an earlier request by the officer to tell him where Frank's clothing was located. Detectives Newsom and McCarty went to 4339 Enright, without asking appellant for permission to search his apartment and without a search warrant. William Hicks met the officers at the curb and conducted them into the building, where they ascertained from the landlady that appellant had moved in. After talking to the landlady the officers were taken upstairs by William to appellant's room on the second floor. They found the door open. When the officers were still in the hallway and before entering the room they could see into appellant's room. They saw two beds. On one of the beds they saw a radio, a red costume jewelry case, some money, and a paper bag. They also saw a yellow towel on the floor at the side of the bed. On the floor by the towel they saw a white handkerchief and a burned white T-shirt. All this was visible from the door. Also visible was a cardboard box, the top of which was open, revealing some checks and banking papers. William said to the officers, "Look what I found." The officers entered the room. William told the officers that these articles belonged to Alberta Catchings and the officers seized them. They also seized some of appellant's clothing, which was in a closet and could not be seen from the hallway. The radio and red case were introduced in evidence at the trial.

The officers had a right to be in the hallway, which was a common area open to anyone having business there. United States v. Lewis, 227 F.Supp. 433 (S.D.N.Y.1964). The articles of personal property belonging to the victim thus seized were not obtained as a result of a search, but were in the plain view of officers who had a right to be in a position to have that view. This property of the victim comes within the "plain view" exception enunciated in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), and followed by this Court in numerous cases, including State v. Eaton, 504 S.W.2d 12, 18 [11] (Mo.1973), and State v. Gott, 456 S.W.2d 38, 40 [3] (Mo.1970), and on retrial may not be excluded on the ground that it was seized as a result of an unreasonable and unconstitutional search.

In consideration of appellant's Point III court and counsel are reminded that before any such articles are admitted in evidence on retrial they must be properly identified and meet the tests of relevancy, materiality, probative value and reasons of policy in the administration of justice referred to in State v. Wynne, 353 Mo. 276, 182 S.W.2d 294, 299 [6] (1944). Caution should be exercised to avoid the wholesale display before the jury of exhibits not later offered in evidence.

Appellant's Point IV is that the trial court erred in overruling his motion to inspect and copy the police report, which appellant contends he is entitled to on the basis of a suggested inconsistency between Detective McCarty's testimony that "everything (seized in appellant's room) was on the bed," and a psychiatric report stating that according to the police report the items found were "hidden in various places in this apartment." On this showing, which satisfactorily indicates that the report may contain information beneficial to appellant, and because we conclude that without this information the trial of appellant would be fundamentally unfair, the ruling of the trial court on the motion

is set aside and the police report is ordered produced for appellant to inspect and copy.

Judgment reversed and cause remanded for a new trial.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.