**STATE of Missouri, Respondent,**

v.

**Mohamed Sami KECHRID, Appellant.**

**No. WD 44264.**

Missouri Court of Appeals, Western District.

Jan. 14, 1992.

William D. Rotts, Columbia, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and SPINDEN, JJ.

SPINDEN, Judge.

Mohamed Sami Kechrid appeals his jury conviction of felony stealing charges, § 570.030, RSMo 1986, and his one-year jail

sentence. Kechrid asserts the trial court erred by (1) overruling his motion to suppress certain evidence and testimony, (2) denying his motion for continuance, and (3) overruling his motion for judgment of acquittal. We affirm.

On May 5, 1990, The Bedroom, a waterbed store in Columbia, Missouri, had a special sale of discontinued and damaged waterbeds and related items. The items were stored in trailers parked in the store's parking lot. The day after the sale, one of the employees' daughter observed a small yellow car parked near one of the trailers. The trailer's doors were partially open and people were inside. When she saw the car pull out of the parking lot and noticed that it was filled with waterbed components, she noted the license plate number. When the car returned to the parking lot about 15 minutes later, she called the police.

Officer Regina Turner of the Columbia Police Department investigated the incident and discovered that Kechrid was the car's registered owner. She and another officer went to the recorded address and found a car matching the suspicious car's description.

Kechrid lived in a three-story boarding house which had an entrance on the main floor. Kechrid and his two friends lived on the main floor and shared a kitchen, bathroom and storage area. Each claimed a bedroom with separate locks.

The front door was unlocked and open when the officers entered the house. Just inside the front door were stairs leading to apartments upstairs. Beyond the stairs was another open door to the kitchen. The officers proceeded down the hallway to the open door and, from the hallway, saw Kechrid in his bedroom holding a mattress. The room was filled with waterbed components. Based on their observations from the hallway, the officers entered Kechrid's bedroom and arrested him.

Prior to trial, Kechrid filed a motion to suppress the evidence obtained from his residence and the testimonies of the Bedroom's store manager, his roommate, and Officer Turner. Kechrid contended that

they resulted from a warrantless search made without probable cause and without his consent. The trial court denied the motion.

The prosecutor originally charged Kechrid with a Class C felony of stealing in excess of $150. Four days before trial, the state announced its intention to amend the information to third offense stealing, eliminating value as an issue. Kechrid responded that he would object because the amended information would preclude his asserting a defense that the items stolen were worth less than $150.

Nonetheless, Kechrid released from subpoena his primary witness concerning the value issue. At trial, when the state sought to amend the information, Kechrid objected. The state withdrew its request to amend and proceeded on the original information. Kechrid then moved for a continuance to reserve the subpoena of his valuation witness. The court denied the motion.

We review the trial court's order, the facts and reasonable inferences arising from them in a light favorable to the order. We disregard contrary evidence and inferences and affirm the trial court's order if the evidence is sufficient to sustain it. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). We defer to the trial court's determination of the credibility of witnesses and the weight of the evidence. *State v. Beck*, 687 S.W.2d 155, 157–58 (Mo. banc 1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986).

■ Kechrid argues that certain testimony and evidence should have been suppressed because the state obtained it by an illegal and warrantless search. Kechrid correctly asserts that, except for a few well-defined exceptions, all warrantless searches are *per se* unconstitutional. *Blair*, 691 S.W.2d at 260. The Fourth Amendment to the U.S. Constitution protects from illegal searches any area in which a person has a legitimate expectation of privacy. *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). We agree, however, with the state's contention that Kechrid had no expectation of privacy in the common area that Officer Turner was in, and that no search occurred because the contraband seized was in plain view.

When an officer observes evidence in plain view while in a place where he or she has a right to be and it is apparent to the officer that there is evidence of a crime before him or her, the officer may seize it without a warrant. *State v. Schneider*, 736 S.W.2d 392, 399 (Mo.banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). Inadvertence is no longer a necessary condition for application of the plain view rule. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "An unreasonable search and unlawful seizure cannot occur relative to items observed in the plain view of an officer while he is ... performing legitimate investigative functions." *State v. Carpenter*, 721 S.W.2d 154, 157 (Mo. App.1986).

In this case, Officer Turner observed the waterbed items in Kechrid's room through an open door from a hallway in a common area open to all the residents of the house. The officer "had a right to be in the hallway, which was a common area open to anyone having business there." *State v. Hicks*, 515 S.W.2d 518, 523 (Mo.1974). As the court stated in *United States v. Anderson*, 533 F.2d 1210, 1214 (D.C.Cir. 1976):

> When the police officers entered the rooming house they did not enter appellant's private dwelling; instead they merely entered the common corridors of the building, which were available to residents of the rooming house, their guests, people making deliveries, and others who had a legitimate reason to be on the premises. Consequently, insofar as appellant maintains that he had a constitutionally protected reasonable expectation of privacy in the corridors of the rooming house, we disagree; appellant's constitutionally protected privacy interest began at the door to room eight rath-

er than at the door to the entire rooming house.

The hallway of the house was available not only for use by Kechrid and his two roommates and their guests, but to the residents of the second floor and their guests, and to any others having legitimate reasons to be on the premises. Hence, we conclude that Kechrid did not have a reasonable expectation of privacy in the hallway, and Officer Turner had a legitimate reason—crime investigation—to be on the premises.

Officer Turner realized that what she saw in Kechrid's room was evidence relating to the crime she was investigating; therefore, the items seized "were not obtained as a result of a search, but were in plain view of officers who had a right to be in a position to have that view." *Hicks*, 515 S.W.2d at 523. Because the evidence seized was in Officer Turner's plain view, her seizure of it did not offend the Fourth Amendment, and the trial court did not err in overruling Kechrid's motion to suppress.

■ Kechrid also claims that the trial court erred in denying his oral motion for continuance. Specifically, Kechrid asserts that the denial of the continuance prejudiced his ability to present his best defense because he had released a key witness and could not re-subpoena him.

Ruling on a motion for a continuance rests within the sound discretion of the trial court, and we will not disturb that ruling in the absence of "a strong showing of abuse." *State v. Sweet*, 796 S.W.2d 607, 613 (Mo.banc 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991). Kechrid bears the burden of demonstrating sufficient abuse from the denial. *Id.*

In this case, Kechrid's dilemma was clearly of his own making. Although Kechrid informed the prosecutor that he would object to amending the information which would make value irrelevant to the offense charged, he still released his witness. Apparently, he assumed the trial would proceed on the amended information. However, at trial Kechrid objected to the amendment although he had released his witness. Under these circumstances, Kechrid cannot show that the trial court abused its discretion in denying the continuance. Kechrid chose his trial strategy and cannot now blame the trial court for the consequences.

■ Moreover, the trial court could have denied the continuance solely because Kechrid's motion was not accompanied by an affidavit setting forth the facts upon which the motion was based. *Sweet*, 796 S.W.2d at 613; Rule 24.09. A trial court may deny an oral motion for a continuance on the grounds that it does not comply with Rule 24.09. *State v. Harris*, 781 S.W.2d 137 (Mo.App.1989).

Finally, Kechrid argues that the trial court erred in overruling his motion for judgment of acquittal at the close of the evidence because the state did not adduce sufficient evidence of the stolen items' value to convict him of stealing over $150. We review Kechrid's claim by viewing the evidence and all inferences reasonably drawn from it in the light most favorable to the verdict, and we disregard all contrary evidence and inferences. *State v. Guinan*, 665 S.W.2d 325, 327 (Mo.banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984).

■ Value, for the purposes of a Class C felony, is defined as "the market value of the property at the time and place of the crime[.]" Section 570.020, RSMo 1986. Fair market value "may ... be either the wholesale cost or the retail price. Inasmuch as retail price, as well as wholesale cost, does shed light upon fair market value, both have some relevancy in determining fair market value." *State v. Carter*, 544 S.W.2d 334, 339 (Mo.App.1976). Because we are dealing with items which are sold on a daily basis, the retail price can be the sole evidence that the stolen property had a value of $150 or more. *State v. Morgan*, 807 S.W.2d 209 (Mo.App.1991).

■ The Bedroom's store manager testified that the stolen property's value was $315. He prefaced most of his valuations with the phrase "we would get," suggest-

ing retail value. Kechrid contends that this testimony was speculative with no reasonable basis because the price could fluctuate drastically depending on how much the item was damaged, if the item had any use to the store, and why the customer wanted the items. We disagree. As the court stated in *Carter*, 544 S.W.2d at 338:

> We do not deny that retail price is simply an expectancy, an amount the owner hopes to receive for the item in the future. Nor do we deny that the profit factor included in retail prices can be arbitrarily inflated or deflated by the merchant, and therefore, not realistically represent a true value to the victim. From this alone, however, we cannot conclude that evidence of retail price is not some evidence of market value which we believe is the true test.

Because nothing in the evidence indicated that the manager's valuations were not the market value, we conclude that the jury's determination of value was not against the weight of the evidence.

The trial court did not err in overruling Kechrid's motion to suppress, in denying his motion or continuance, and in overruling his motion for judgment of acquittal. We affirm the judgment.

All concur.