STATE of Missouri, Plaintiff–Respondent,

v.

John D. VARVERA, Defendant–Appellant.

No. 19582.

Missouri Court of Appeals, Southern District, Division One.

April 27, 1995.

---

Gary E. Brotherton, Office of the State Public Defender, Columbia, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Becky Owenson Kilpatrick, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Chief Judge.

Defendant John D. Varvera appeals his convictions by a jury of burglary in the second degree, § 569.170, RSMo 1986, and stealing, § 570.030, RSMo 1986. The trial court sentenced Defendant to two consecutive five-year prison terms as a prior offender under § 557.036.4, RSMo 1990, and § 558.016.2, RSMo 1990.

Defendant's single point requests that we review for plain error the trial court's failure to *sua sponte* declare a mistrial because of a witness' alleged reference to Defendant's prior criminal activity. After reviewing under the plain error standard, we affirm.

In the late summer or early fall of 1992, Defendant and his friend, John Dukes, were discussing a burglary that had occurred at the Tonka Hills Restaurant in Linn Creek, Missouri. Dukes, who worked weekends at the restaurant, told Defendant the thief had "spent a lot of time" prying through a door when he could easily have climbed on top of a walk-in freezer and "kicked [the] vent in." "[I]t would be real easy to kick it in and you could be in the restaurant in about five to ten seconds with a good kick." Dukes told Defendant "how stupid it was.... '[I]f I was going to be a criminal ... I'd spend more time casing the place....'"

Dukes then told Defendant, "[I]t would be worthless to break into the restaurant," however, because "all the money [in the restaurant] was locked up in a big safe in the office every night when they closed...." Defendant responded that if he were going to rob the place, he would just take the safe with the help of another person. Nothing more came of this conversation at that time.

On December 2, 1992, Defendant spent part of the evening with his friends Jason Tewell and Todd Shank. The three decided to go out for a drive and passed by the Tonka Hills Restaurant. At some point, Defendant began to talk about the safe in the restaurant. Tewell, however, did not wish to get involved and was taken to his home. As

Tewell explained it, "I just said that I would stay home ... [a]nd I just went to bed."

After Defendant and Shank left Tewell's home, they drove back to the Tonka Hills restaurant in Defendant's white Ford pickup truck. Their plan was for Defendant to enter the restaurant through the opening over the outdoor freezer while Shank stood guard. Defendant carried out the initial phase of the plan by kicking in the vent above the freezer and climbing through the opening. Shank then heard noises from within the restaurant that sounded "like something was being moved."

Approximately ten minutes later, Defendant told Shank to come inside through a window, where Shank observed a safe that had been dragged across the kitchen to within twelve feet of the door. The two then went outside the restaurant, "went up [to] a bluff in the back of [the restaurant], sat up there and we watched for police.... [We] didn't know if there might be a burglar alarm or something." They then retrieved Defendant's truck, "drove over to the back door, ... threw the safe in the back, and ... left."

Defendant and Shank then drove back to Tewell's home. Upon arriving, Defendant and Shank told Tewell, "We got it" and asked Tewell if he wanted to help. Tewell answered, "No, leave me alone," whereon Defendant and Shank left. They went to the home of another of Defendant's friends in Morgan County. There, they forced the safe open, removed the money therein, and divided the spoils three ways. Defendant and Shank then threw the safe into a roadside ditch where it was later discovered and recovered by law officers.

During their initial investigation, police found a tire tread mark near the back door of the restaurant. Later, after Shank gave the police a statement implicating himself and Defendant, he also identified Defendant's vehicle as the one used in the burglary. The police then matched the right front tire tread on Defendant's pickup truck to the tread mark left at the restaurant during the burglary. Both Defendant and Shank were charged. Defendant's conviction followed.

■ In his single point on appeal, Defendant contends the trial court plainly erred when it did not, *sua sponte*, declare a mistrial because of a witness' alleged reference to Defendant's prior criminal activity. The testimony of which Defendant complains came as witness Tewell explained why he parted company with Defendant and Shank on the evening of the Tonka Hills burglary:

"Q. [by Prosecutor] All right. What happened next?

A. [by Shank] ... [S]omething was mentioned about a safe, and I was feeling uncomfortable, I didn't know what was going to happen or nothing, so I just said that I would stay home, that I was feeling tired. And I just went to bed.

Q. What do you mean you were feeling uncomfortable?

A. *I just, two or three years ago, I'm not sure exactly what date, but me and Mr. Varvera and a kid named Mike Gosling—*

Q. Wait a second, wait a second. Do you have a prior criminal history?

A. Yes.

Q. And you're on probation?

A. Yes, sir.

Q. And you were on probation at that time?

A. Yes.

Q. And you were uncomfortable feeling related to not wanting to get involved in something?

A. Yeah. I wanted to make sure I didn't get in no problem if any trouble had occurred." (Emphasis ours.)

■ Defendant argues that the portion of Shank's testimony emphasized by italics was highly prejudicial as it "connected him with Tewell's criminal record." He contends such testimony is a "clear and unmistakable reference to [Defendant] having at least been arrested, and perhaps convicted, on previous occasions." He insists, therefore, that such testimony runs afoul of the general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts which says that uncharged misconduct is inadmissible for showing the propensity of an accused to

commit such crimes. *See State v. Bernard,* 849 S.W.2d 10, 13[1] (Mo. banc 1993).

■■■ Defendant acknowledges the general principle that declaration of a mistrial in a criminal case is "a drastic remedy warranted only by the most compelling of circumstances." *State v. Johnson,* 700 S.W.2d 815, 819[8] (Mo. banc 1985). A mistrial is "to be utilized only when there is [a] grievous error which cannot be remedied otherwise." *State v. Beal,* 470 S.W.2d 509, 516 (Mo. banc 1971). The decision to grant a mistrial is a matter for the sound discretion of the trial court and should be honored by the appellate courts unless there is a clear showing in the record that the trial court abused its discretion. *State v. Gamble,* 781 S.W.2d 820, 823 (Mo. App.1989).

Defendant also concedes that the claim of error he now asserts was not preserved for appellate review as it was not presented to the trial court in the motion for new trial. He requests that we examine his first point under the plain error standard of Rule 30.20.[1]

■■■ *Plain error* and *prejudicial error* are not synonymous terms. *State v. Valentine,* 646 S.W.2d 729, 731[4] (Mo.1983). Relief under the plain error standard is granted only when an alleged error so substantially affects a defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Hadley,* 815 S.W.2d 422, 423[1] (Mo.banc 1991). Appellate courts use the plain error rule sparingly and limit its application to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice. *State v. Collis,* 849 S.W.2d 660, 663[1] (Mo.App.1993). The determination of whether plain error exists must be based on a consideration of the facts and circumstances of each case. *State v. Cline,* 808 S.W.2d 822, 824[5] (Mo.banc 1991). A defendant bears the burden of demonstrating manifest injustice or miscarriage of justice. *State v. Harrison,* 864 S.W.2d 387, 389[3] (Mo.App.1993).

Here, we find no error, plain or otherwise, in the trial court's failure to *sua sponte* de-clare a mistrial because of Tewell's testimony about why he began to feel uncomfortable as Defendant and Shank mentioned the safe. To invoke the rule of exclusion contended for by Defendant, there must be evidence that Defendant has committed, or has been accused of, charged with, convicted of, or has been definitely associated with another crime. *State v. Lorenz,* 620 S.W.2d 407, 410[4] (Mo.App.1981). Tewell's testimony does not meet that criteria. His response does not clearly show that Defendant had earlier committed a crime, had been accused or charged with criminal offenses, or had been definitely associated with violating any criminal law. There is no indication of the circumstances that existed "two or three years ago" regarding Tewell, Defendant, and Mike Gosling. At best, the remark was vague and indefinite; certainly, it does not refer to a specific crime. For this reason alone, Defendant's point lacks merit. *See State v. Rowe,* 838 S.W.2d 103, 112 (Mo.App. 1992); *State v. Rhodes,* 829 S.W.2d 41, 44 (Mo.App.1992).

■■■ Additionally, we note that if Defendant's past criminal activity or misconduct was reasonably inferable from Tewell's answer—a premise that we reject—it was not an answer responsive to the prosecutor's question. Moreover, to the extent that Tewell's answer is viewed as a comment on Defendant's past criminal conduct, it was voluntary; nothing in the record shows the prosecutor attempted to elicit inadmissible testimony. Unresponsive voluntary testimony indicating that a defendant was involved in offenses other than the one for which he is on trial does not mandate a mistrial. *State v. Miller,* 680 S.W.2d 253, 255[5] (Mo.App. 1984).

Moreover, we find nothing in the record to indicate Tewell's answer was the result of a conscious effort by the state or the witness to interject a prejudicial inference. *See State v. Crawford,* 619 S.W.2d 735, 740[7] (Mo.1981); *Miller,* 680 S.W.2d at 255. Indeed, it was the prosecutor who interrupted Tewell's answer in an obvious effort—successful in our

---

1. In pertinent part, Rule 30.20 reads: "[P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

view—to avoid the problem that Defendant now attempts to raise. The record demonstrates the isolated nature of the objectionable statement and indicates that the state did not connive to bring the testimony before the jury. *See State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc 1988).

Finally, we observe that the evidence of Defendant's guilt was overwhelming. Defendant here has failed to show that the remarks to which he now objects had a decisive effect on his conviction in light of the evidence presented. *See State v. Parker,* 856 S.W.2d 331, 333[4] (Mo. banc 1993).

For the reasons discussed, Defendant's point is without merit and is denied.

We affirm the judgment of the trial court.

FLANIGAN and MONTGOMERY, JJ., concur.