**STATE of Missouri, Plaintiff–Respondent,**

v.

**Gary BALLARD, Defendant–Appellant.**

No. 22744.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 22, 1999.

Craig A. Johnston, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

A jury convicted Gary Ballard (Defendant) of stealing, a class C felony, § 570.030, RSMo Cum.Supp.1996, after which the trial court sentenced him to five years' imprisonment.[1] Defendant's appeal presents a single question: Did the trial court abuse its discretion in denying Defendant's request for a mistrial after a police officer testified that he did not conduct a photo lineup with an eyewitness because the witness told him he "was familiar with [Defendant] from a previous incident?" Defendant contends that this testimony was irrelevant and prejudicial evidence of his involvement in an unrelated crime of the same nature as the crime charged and that, as a result, reversal is mandated. We disagree. We affirm the judgment of conviction.

At trial, a Wal–Mart loss prevention employee, Morton, identified Defendant as the person he saw take a VCR out of the store without paying for it. Morton testified that at the time of the theft, he followed Defendant out of the store but could not apprehend him before he got into a car and drove away. Morton noted the license plate number of the car and provided it to police. Officer Schwartz of the Springfield Police Department investigated the matter and learned that the car was registered to Defendant. Ultimately, the State charged Defendant with stealing the VCR.

As a pre-trial matter, Defendant asked the court to preclude the State from bringing to the jury's attention any of Defendant's "separate or distinct crimes or prior bad acts." Among his specific requests, Defendant asked that the State not mention a February 6, 1996, incident in which Defendant had been caught stealing from Wal–Mart. The prosecutor replied that he did not "intend to get into that." However, the prosecutor also stated that identification was an issue and that Morton's acquaintanceship with Defendant arising out of the February 1996 stealing incident enabled Morton to identify Defendant on this occasion. The prosecutor explained that he intended to ask Morton if he had had previous contact with Defendant and, if so, when and how long. Defense counsel voiced no objection to the inquiries as the prosecutor outlined them. The court nevertheless cautioned the prosecutor to speak with his witnesses and remind them not to mention Defendant's prior criminal history.

During the State's case, Morton's testimony regarding his prior contact with Defendant closely followed the outline the prosecutor announced at the pre-trial conference. Specifically, Morton testified that on January 10, 1997, he knew Defendant by name because they had had face-to-face contact for about an hour on February 6, 1996. Defense counsel did not object to this evidence. On cross-examination, defense counsel asked Morton if the police ever showed him a photo lineup. Morton answered, "No."

The State later called officer Schwartz to testify. Officer Schwartz's testimony included the following:

"Q. [To Schwartz] Did you conduct a photo lineup?

"A. No, sir, I did not.

"Q. What was the reason for that?

"A. Mr. Morton indicated to me that he was familiar with the person that he had named as the suspect.

1. The offense was punishable as a felony because Defendant had two prior stealing convictions. *See* § 570.040, RSMo Cum.Supp. 1995.

"MS. TOBIN [Defense counsel] Objection, Your Honor, He's asking for hearsay.

"THE COURT: The objection will be sustained as to the truth of the matter.... [W]e've already had that gentleman's testimony as to what he knew about the situation. We'll receive the officer's testimony now about that only for the purpose of explaining why there was no photo lineup done. So anything he says that recounts what somebody else said, you will disregard that except for the purpose of making a understanding under Mr. Crank's [Prosecutor's] original question.

. . . .

"Q. [By prosecutor] Now, then, I'll ask the same question, if you remember that.

"A. Mr. Morton indicated to me that he was familiar with [Defendant] *from a previous incident*, knew him by name and ... knew him by face, and so I was fairly certain of his identification of him at the time." (Emphasis added.)

Other than defense counsel's hearsay complaint, she made no objection to Schwartz's "previous incident" testimony until after the State rested its case. Only then did she move for a mistrial based on Schwartz's testimony "about the prior incident." Defense counsel explained her delay as follows: "I feel like if I would have objected exactly at that time, it would have highlighted it even more for the jury." In response, the trial court expressed its opinion that the use of the word "incident" was an "unfortunate characterization ... because that probably carries a little more of a negative connotation than simply saying they met or something like that." However, the court found that since Schwartz did not go into more detail, the comment was not "sufficient to justify a new trial." Continuing, the trial court addressed defense counsel as follows:

"[THE COURT] For the reasons you just said, I can't picture any other relief that would be helpful to you. But if you have any idea of any other relief that you would like to request, I'd certainly consider it.

"MS. TOBIN [defense counsel]: No, Your Honor."

Defense counsel then presented and argued a motion for acquittal. The trial court overruled the motion, whereupon Defendant presented his defense, which consisted of one alibi witness.

Later, while in deliberation, the jury sent written questions to the trial court. One of the questions asked, "What was the reason Mr. Morton had an hour-long encounter [with Defendant] on 2/96?" The trial court advised the jury that it had given all the instruction it could and that the jury "must decide the case on the evidence presented at trial." After further deliberation, the jury asked to see certain documentary exhibits. The trial court granted this request. Ultimately, the jury returned a guilty verdict. The trial court entered judgment in accordance with the jury's verdict. This appeal followed.

Defendant's only point maintains that officer Schwartz's reference to Defendant's "previous incident" with Morton violated his rights to due process, a fair trial, and to be tried for the offense with which he was charged because this was evidence that he had been involved in an a separate, unrelated crime. He insists that such testimony runs afoul of the general rule that evidence of other crimes "is inadmissible and constitutes error unless it has some legitimate tendency to establish that defendant is guilty of the crime with which he is charged" because such evidence "may result in a conviction based upon crimes for which the defendant is presently not being tried." *State v. Brooks,* 675 S.W.2d 53, 59[12, 13] (Mo.App.1984). Defendant characterizes Schwartz's "previous incident" testimony as irrelevant and argues that its probative value was outweighed by its prejudicial nature. He contends that Schwartz's remark diverted the jury's attention away from the charged offense, as

evidenced by the jury's note asking, "What was the reason Mr. Morton had an hour-long encounter [with Defendant] on 2/96?"

█ Preliminarily, we consider the State's claim that Defendant failed to properly preserve this point for our review. The State correctly points out that "[i]n order to preserve an evidentiary question for appellate review, an objection needs to be made at the first opportunity." *State v. Manes,* 961 S.W.2d 889, 890[2] (Mo.App.1998). This so-called "contemporaneous objection" rule exists to insure the integrity of Missouri's criminal trial process. *See Parton v. Wyrick,* 704 F.2d 415, 417[5] (8th Cir.1983); *State v. Finster,* 985 S.W.2d 881, 888 (Mo.App.1999).

Defendant concedes in his brief that he did not object at the time Schwartz made the "other incident" statement. Even so, Defendant asks this court to "treat this issue as properly preserved for appeal since [he] requested the mistrial as soon as possible, in a manner so as to not exacerbate prejudice."

█ To support his argument, Defendant points to the trial judge's comment that he could not "picture any other relief that would be helpful to you." We view this comment as a mere expression of the trial judge's opinion that defense counsel was correct in her trial strategy, i.e., her decision not to timely object or seek additional relief.[2] In any criminal trial, strategy can account for a party not objecting to proffered testimony. *Finster,* 985 S.W.2d at 888. However, when an accused opts not to object to inadmissible testimony for strategic reasons, any alleged error in its admission is waived. *State v. Vivone,* 998 S.W.2d 146, 156–57 (Mo.App.1999). *See McMillin v. Union Elec. Co.,* 820 S.W.2d 352, 355 (Mo.App.1991).

The case of *State v. Jackson,* 500 S.W.2d 306 (Mo.App.1973), is particularly instruc-

tive on this issue. In *Jackson,* the defendant's Muslim religion was interjected during cross-examination of a defense witness. Defense counsel objected to the reference to the defendant's religion, and the trial court sustained the objection. Almost immediately, defense counsel lodged a second objection. However, the trial court never ruled on the second objection and was not asked to do so anytime after the objection was made. As the trial progressed, additional testimony regarding the defendant's religion was adduced, during which time the defense did not object, move for mistrial, or request that the jury be instructed to disregard the evidence. On appeal, the defendant argued that no further objections were made because they would have been "futile" and would have "further inflame[d] the jury and call[ed] attention to the matter." *Id.* at 314. The western district rejected the defendant's argument as follows:

"It is, of course, so well established in our procedural law as not to require citation of authorities that proper objections to inadmissible evidence must be promptly made and adversely ruled in order to preserve error. *If upon consideration of trial strategy this right is not exercised, any such error passes from the case unless the evidence thus admitted is so inflammatory and prejudicial as to corrupt the whole trial process and require judicial relief as plain error."*

*Id.* at 314[15, 16] (emphasis added).

Here, Defendant chose, as a matter of trial strategy, to forego a timely objection to Schwartz's "previous incident" testimony until the State had rested. Even then, the only relief Defendant sought was a mistrial. He did not ask the court to either strike the objectionable part of Schwartz's answer or instruct the jury to disregard the testimony. Because Defen-

2. Also, the context of the trial judge's remark is particulary significant in this case. At the time he made the remark, the trial judge had already instructed the jury to disregard anything Schwartz had to say about his conversation with Morton *except for the purpose of explaining Schwartz's reason for not showing Morton a photo lineup.*

dant failed to contemporaneously object to this evidence and because the only relief he belatedly sought was a mistrial, Defendant's claim of trial court error passed from the case except as we may elect to review it under the plain error standard. *Id.* at 314[16].

■ Under Missouri Supreme Court Rule 30.20 (1999) this court has the discretion to review for plain errors affecting substantial rights. However, when we do review for plain error, we do so with the following principles in mind.

> "*Plain error* and *prejudicial error* are not synonymous terms. Relief under the plain error standard is granted only when an alleged error so substantially affects a defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. Appellate courts use the plain error rule sparingly and limit its application to those cases where there is a strong, clear demonstration of manifest injustice or miscarriage of justice. The determination of whether plain error exists must be based on a consideration of the facts and circumstances of each case. A defendant bears the burden of demonstrating manifest injustice or miscarriage of justice."

*State v. Varvera,* 897 S.W.2d 198, 201[6–9] (Mo.App.1995) (citations omitted).

■ Defendant's sole request for relief was a mistrial. However, a mistrial is "a drastic remedy warranted only by the most compelling of circumstances." *State v. Johnson,* 700 S.W.2d 815, 819[8] (Mo. banc 1985). A mistrial is "to be utilized only when there is [a] grievous error which cannot be remedied otherwise." *State v. Beal,* 470 S.W.2d 509, 516 (Mo.banc 1971).

The decision to grant a mistrial is a matter for the sound discretion of the trial court and should be honored by an appellate court unless there is a clear showing in the record that the trial court abused its considerable discretion. *Varvera,* 897 S.W.2d at 201[5].

■ Here, we find no plain error in the trial court's refusal to declare a mistrial in response to officer Schwartz's "previous incident" remark. "To invoke the rule of exclusion contended for by Defendant, there must be evidence that Defendant has committed, or has been accused of, charged with, convicted of, or ... definitely associated with another crime." *Id.;* *State v. Watson,* 806 S.W.2d 677, 678[1] (Mo.App.1991). Schwartz's testimony does not meet that criteria. His "previous incident" remark does not clearly show that Defendant had earlier committed, or had been accused of, charged with, convicted of, or definitely associated with another crime. Schwartz's testimony gave no indication of what circumstances brought Morton into contact with Defendant in February 1996. " 'Mere familiarity with a police officer does not constitute evidence that one has been arrested or convicted of another crime.' " *State v. Maddox,* 658 S.W.2d 74, 76 (Mo.App.1983) (citation omitted).[3] At best, Schwartz's "previous incident" remark was vague and indefinite; certainly, it was not clear evidence that associated Defendant with another crime. *See State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo.banc 1989); *State v. Weeks,* 982 S.W.2d 825, 837–38 (Mo.App.1998); *Varvera,* 897 S.W.2d at 201. *See also State v. Hoff,* 904 S.W.2d 56, 60 (Mo.App.1995). We are confirmed in this view by the fact that the jury inquired about the nature of

**3.** In *State v. Harris,* 740 S.W.2d 348 (Mo.App. 1987), a security guard for a store saw the accused steal dresses. On appeal, the accused complained that the trial court erred in failing to declare a mistrial sua sponte because the guard testified she knew the accused by name and had seen her in the store twenty times. The eastern district concluded that admission of this testimony did not result

in manifest injustice, noting that " '[i]t is well known that most police officers have a wide acquaintance among the citizenry in general and the fact that a person is known to a police officer does not necessarily convey the impression that he has a criminal record.' " *Id.* at 350 (quoting *State v. Berry,* 679 S.W.2d 868, 873 (Mo.App.1984)).

the earlier contact between Defendant and Morton. Had Schwartz's testimony clearly demonstrated Defendant's earlier criminal activity, the jury inquiry would have been unnecessary. For these reasons alone, Defendant's point lacks merit.

■ Additionally, we note that even if Defendant's past criminal activity or misconduct was reasonably inferable from Schwartz's answer—a premise that we reject—his answer was not responsive to the prosecutor's question. To the extent that anyone might interpret Schwartz's answer as a comment on Defendant's past criminal conduct, it was voluntary. Nothing in the record shows the prosecutor sought to elicit inadmissible testimony. Unresponsive voluntary testimony indicating that a defendant was involved in offenses other than the one for which he is on trial does not mandate a mistrial. *Varvera,* 897 S.W.2d at 201[10].

■ Furthermore, even if Schwartz's "other incident" remark were viewed as evidence of another, unrelated crime, it was Defendant who opened the door to such testimony by making the point that Morton was never shown a photo lineup. Where an accused injects an issue into the case, the State may respond by presenting otherwise inadmissible evidence in order to explain or counteract a negative inference raised by the issue the defendant injected. *State v. Lingar* 726 S.W.2d 728, 734–35[8] (Mo.banc 1987).

For these reasons, Defendant's point is without merit and is denied. We affirm the judgment of the trial court.

CROW, P.J., concurs.

PARRISH, J., concurs.