### STATE of Missouri, Plaintiff–Respondent,

v.

### Justin E. WITTE, Defendant–Appellant.

### No. 22862.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 2001.

Motion for Rehearing or Transfer Denied
Feb. 20, 2001.

Application for Transfer Denied
March 20, 2001.

---

**3.** Defendant's last point complains about the prosecutor's closing argument. Our decision renders this point moot.

Ellen H. Flottman, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Adriane D. Crouse, Assistant Attorney General, Jefferson City, for Respondent.

GARRISON, Judge.

Justin E. Witte ("Defendant") was convicted by a jury of armed criminal action, § 571.015, RSMo 1994, and robbery in the first degree, § 569.020, RSMo 1994. He was sentenced as a prior and persistent

offender to thirty years on the robbery charge and fifteen years on the armed criminal action charge, with the sentences to be served consecutively. On this appeal, he contends that the trial court erred in overruling his motion to suppress evidence found in a search of his truck following his arrest. He also contends that the trial court erred in not granting his request for a mistrial when a witness made reference to his "past." We affirm.

In August 1996, Defendant was living with his girlfriend, Cindy Kennedy ("Cindy") in Lebanon, Missouri. They had been having financial problems as a result of his having been laid off and her not being employed. On August 8, 1996, they cashed his unemployment check at the Citizen's Bank of the Ozarks in Greenview, Missouri.

The next day, August 9, 1996, Defendant told Cindy that he was going for a ride, and drove off in his pickup with his motorcycle in the back, covered with a blue tarp. Cindy then called Greg Sellers ("Sellers"), an undercover narcotics officer with whom she had worked as an informant. During the conversation, she told him about Defendant leaving with his motorcycle covered in the back of his truck, and the fact that he would not have been taking it for repairs because they had recently been riding it. She made the statement, "I hope he's not going to rob a bank." When Sellers asked her why she would say that, she said that they had been having financial problems. She also said that she did not know if Defendant was going to rob a bank, but said that it was weird that he would lay the motorcycle down in the back of the truck and cover it up. Sellers was familiar with Defendant's motorcycle, describing it as a "bright color like an orange" Honda, and also knew that Defendant had previously been convicted of bank robbery during which he used a motorcy-

cle. Sellers reported his conversation with Cindy to his supervisor who, in turn, contacted the Lebanon, Missouri police department and told them that there might be a bank robbery in the area.

Later that morning, a person wearing a motorcycle helmet with goggles and a mouth guard, what appeared to be a dark ski mask, dark jeans, a dark T-shirt covered with a plaid flannel shirt or jacket, and dark lace-up boots robbed the Citizen's Bank of the Ozarks in Greenview. The person left the scene on a bright red-orange motorcycle with no license plate on it.

Sellers was told of the robbery by a person who heard it on a police scanner. He then contacted the sheriff's office and told them of his conversation with Cindy, and gave them a description of Defendant's truck and motorcycle. He also later showed a deputy where Cindy and Defendant lived. Officers arrested Defendant when he returned to his home driving his pickup. A subsequent search of the truck produced an Illinois motorcycle license plate lying on the floorboard along with a wrench, screwdrivers, and nuts and bolts.[1] Also discovered in the search was a duffle bag containing a pair of dark colored jeans and a dark T-shirt. A pair of black boots was later retrieved from a locker at the jail where Defendant's personal items were placed following his arrest.

Several months after the robbery, Steve Dredge reported finding a motorcycle, helmet, gloves, goggles, a plaid winter shirt, a ski mask, and a brown leather holster with 12 rounds of .357 magnum ammunition in a field behind his house near Greenview. The items found on Mr. Dredge's property and in Defendant's truck were later identified by witnesses as being similar to those worn or used by the person who robbed the bank. The Missouri State Water Patrol later recovered a .357 magnum revolver

---

1. Although the arresting officers apparently made a cursory search of the truck for "evidence or weapons" at the scene of the arrest, nothing was seized at that time. A search

warrant was later obtained for the truck, at least in part on the basis of an affidavit by Sellers.

from a pond on Mr. Dredge's property near where the motorcycle and other items were discovered. The gun and holster were identified by Defendant's landlord as items that were stolen from him in early August before the robbery. Cindy identified the motorcycle, helmet and goggles found at Mr. Dredge's as belonging to Defendant.

Prior to trial, Defendant filed a motion to suppress the items of evidence found in Defendant's truck, which he described as a duffel bag containing a black T-shirt and black pants, a blue tarp, Illinois motorcycle license plates, assorted nuts and bolts, a wrench, a Phillips screwdriver, and a standard screwdriver. One of the grounds for the motion to suppress was that the search of the truck was not incident to a lawful arrest. At the hearing on the motion to suppress, evidence was presented about the conversation between Sellers and Cindy on the morning of the robbery, including the fact that Cindy had said they were having financial problems, it was weird that Defendant had loaded his motorcycle in the truck and covered it with a tarp before leaving, and that she hoped he was not going to rob a bank. Sellers also testified at that hearing about his familiarity with Defendant's motorcycle as well as his knowledge that Defendant had previously used a motorcycle to rob a bank. As indicated earlier, Sellers reported this information to his superior, who in turn reported it to the Lebanon police.

The evidence at the hearing also revealed that when Sellers heard of the bank robbery and called the sheriff's office, he was told that they were looking for a man on a motorcycle that had robbed the bank in Greenview. Sellers went to the area of Defendant's home and talked with some of the officers before Defendant appeared and was arrested. He told at least one of the officers who was involved in the subsequent arrest that Defendant had left home that morning with his motorcycle in the back of his pickup covered with a tarp, and that he had been involved in a previous bank robbery involving a motorcycle. The trial court overruled the motion to suppress and the evidence eventually seized from the truck was introduced in evidence at trial.

Defendant's first point on appeal is:

The trial court erred in overruling defense counsel's motion to suppress the evidence found in [Defendant's] truck and in admitting that evidence at trial over defense counsel's objections, because these rulings violated [Defendant's] rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 15 and 18(a) of the Missouri Constitution, in that there was no probable cause to arrest [Defendant] based only on [Defendant's] previously having robbed a bank on a motorcycle, the fact that this robbery was committed by someone on a motorcycle, and [Defendant's] girlfriend's joking remark that "maybe he's going to go rob a bank." Neither the initial search of the truck nor the subsequent inventory search of the truck would have occurred but for the illegal arrest of [Defendant] and the items found in the truck were incriminating, therefore, [Defendant] was prejudiced by the trial court's error.

The trial court's ruling will be affirmed if sufficient evidence exists in the record to support its finding. *State v. Thompson*, 826 S.W.2d 17, 19 (Mo.App. W.D.1992), *cert. denied*, 506 U.S. 884, 113 S.Ct. 242, 121 L.Ed.2d 176 (1992). On review, we consider the facts and the reasonable inferences from those facts in the light most favorable to the trial court's ruling. *State v. Rodriguez*, 877 S.W.2d 106, 110 (Mo.banc 1994).

Defendant attacks the search of his truck based on the lack of probable cause to make the arrest. He explains that "[t]he search of the truck was based solely on the illegal arrest of [Defendant], which was based on insufficient probable cause to support the arrest." Therefore, to determine whether the trial court properly overruled the motion to suppress, we must

determine whether the arrest was made with probable cause, since the arrest was made without a warrant.

In support of this point, Defendant cites *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964), for the proposition that the constitutionality of an arrest "depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." There is no precise test to determine whether probable cause to arrest existed, but rather, it is based on the particular facts and circumstances of the individual case. *State v. Clayton*, 995 S.W.2d 468, 477 (Mo.banc 1999), *cert. denied*, 528 U.S. 1027, 120 S.Ct. 543, 145 L.Ed.2d 421 (1999). Probable cause is determined by the collective knowledge and facts available to all of the officers participating in the arrest; the arresting officer does not need to possess all of the available information. *Id.* The practical considerations of everyday life on which a reasonably prudent person acts, not the hindsight of legal technicians, governs the probable cause determination. *State v. Stokes*, 710 S.W.2d 424, 426 (Mo. App. E.D.1986). Defendant correctly points out, however, that the requirement of probable cause can never be satisfied with a bare suspicion of guilt. *See State v. Hicks*, 515 S.W.2d 518, 521 (Mo.1974).

Defendant relies on *Hicks*, in arguing that probable cause did not exist to support his arrest. In that case, the Missouri Supreme Court held that probable cause did not exist to arrest the defendant for first degree murder where the only information the authorities had prior to the arrest was that defendant had a history of prior arrests and had recently been released from a state hospital where he received psychiatric treatment; and he lived near the victim's apartment. 515 S.W.2d at 520–521. There, the Court noted that no other facts and circumstances from which the arresting officers might infer a nexus between the defendant and the murder were shown to have been known to the officers. *Id.*

In this case, the authorities had information that Cindy and Defendant had been having financial problems; Defendant had left with his motorcycle in the pickup covered with a tarp, although it needed no repairs, a fact that Cindy had reported as being weird; that Cindy had said that she hoped he was not going to rob a bank; the person who robbed the bank was reported to have left the scene on a motorcycle similar to the one known to belong to Defendant; and Defendant had previously been convicted of robbing a bank using a motorcycle. Under these circumstances, we hold that the officers had probable cause to arrest Defendant. Defendant's first point is denied.

In his other point on appeal, Defendant contends that the trial court erred in overruling his motion for a mistrial when Sellers made an unresponsive comment during his direct examination by the prosecutor that he was "aware of [Defendant's] past," which Defendant says "may have led the jury to infer that [Defendant] had previously committed robberies, a fact which had properly been excluded by the trial court from their consideration." In support, he relies on cases such as *State v. Dunn*, 309 S.W.2d 643, 645 (Mo.banc 1958), for the principle that evidence of other crimes not properly related to the one for which a defendant is on trial violates that defendant's right to be tried for the offense with which he is charged.

Prior to trial, Defendant filed a motion in limine to preclude the State from introducing evidence that he had two prior convictions for bank robbery. The trial court took the motion under advisement. During the direct examination of Sellers, he testified about the conversation he had

with Cindy in which she told him about Defendant leaving their home that morning with the motorcycle in the back of the pickup, and that she was afraid he might go rob a bank. The following then occurred:

Q: (Prosecutor): And what did you do with that information?

A: I got off the phone with [Cindy] and I immediately called my sergeant, Terry Mills, and I give (sic) him the information that possibly [Defendant] might be going to rob a bank.

Q: Now, this business that you are in is getting information, is that correct?

A: That's correct.

Q: And you rely upon lots of different people who just give you tips and information; is that correct?

A: That's correct.

Q: You were sufficiently concerned, you thought it would be better to notify somebody higher up?

A: I was aware of [Defendant's] past.

At that point, defense counsel objected that the last comment of Sellers was a reference to prior convictions or prior illegal acts giving the jury the impression that Defendant had a checkered past and had committed some earlier criminal acts. The prosecutor responded that he had not tried to elicit the answer that Sellers gave, and that in any event, the statement by Sellers was not specific, and could be corrected by instructing the jury to disregard the last answer. The trial court then overruled the motion for a mistrial, but defense counsel rejected the possibility of instructing the jury to disregard the answer.

■ In *State v. Varvera*, 897 S.W.2d 198, 201 (Mo.App. S.D.1995), we said:

... declaration of a mistrial in a criminal case is "a drastic remedy warranted only by the most compelling of circumstances." A mistrial is "to be utilized only when there is a grievous error which cannot be remedied otherwise." The decision to grant a mistrial is a matter for the sound discretion of the

trial court and should be honored by the appellate courts unless there is a clear showing in the record that the trial court abused its discretion. (Citations omitted.)

The reason a decision on whether to grant a mistrial is largely a matter for the trial court's discretion is because it is in a better position to determine any prejudicial effects from the alleged error. *State v. Galindo*, 973 S.W.2d 574, 580 (Mo.App. S.D.1998).

It has been said that in analyzing the prejudicial effect of uninvited reference to other crimes evidence, the courts generally examine five factors: (1) whether the statement was, in fact, voluntary and unresponsive to the prosecutor's questioning or whether the prosecutor deliberately attempted to elicit the comments; (2) whether the statement was singular and isolated, and whether it was emphasized or magnified by the prosecution; (3) whether the comments were vague and indefinite, or whether they made specific reference to crimes committed by the accused; (4) whether the court promptly sustained defense counsel's objection to the statement and instructed the jury to disregard the volunteered statement; and (5) whether in view of the other evidence presented and the strength of the State's case, it appeared that the comment played a decisive role in the determination of guilt. *State v. Smith*, 934 S.W.2d 318, 320 (Mo.App. W.D. 1996).

In *State v. Ballard*, 6 S.W.3d 210, 211 (Mo.App. S.D.1999), a police officer testified that he did not conduct a photo lineup with an eyewitness because the witness told him that he "was familiar with [Defendant] from a previous incident." There, the defendant argued that the reference to a "previous incident" violated his right to be tried for the offense with which he was charged because the reference was evidence that he had been involved in a separate, unrelated crime. In affirming the denial of a mistrial, we said:

"To invoke the rule of exclusion contended for by Defendant, there must be evidence that Defendant has committed, or has been accused of, charged with, convicted of, or ... definitely associated with another crime." [The testimony] does not meet that criteria. [The officer's] "previous incident" remark does not clearly show that Defendant had earlier committed, or had been accused of, charged with, convicted of, or definitely associated with another crime. [The officer's testimony] gave no indication of what circumstances brought [the witness] into contact with Defendant ... "Mere familiarity with a police officer does not constitute evidence that one has been arrested or convicted of another crime." At best, [the officer's] "previous incident" remark was vague and indefinite; certainly, it was not clear evidence that associated Defendant with another crime. (Citations omitted.)

*Id.* at 214.

 In the instant case, the comment by Sellers did not constitute evidence that Defendant had committed, or had been accused of, charged with, convicted of, or definitely associated with another crime. It was a vague and indefinite remark at best, and did not refer to a specific crime. Vague references cannot be characterized as clear evidence associating an accused with other crimes. *State v. Weeks,* 982 S.W.2d 825, 837–838 (Mo.App. S.D.1998). For this reason alone, Defendant's point lacks merit. *Varvera,* 897 S.W.2d at 201.

Additionally, we note that even if Defendant's past criminal activity or misconduct was reasonably inferable from Sellers' comment, a premise which we reject, the comment was not responsive to the prosecutor's question. It appears to have been a voluntary statement, and nothing in the record indicates that the prosecutor attempted to elicit the statement. Unresponsive voluntary testimony indicating that a defendant was involved in offenses other than the one for which he is on trial does not mandate a mistrial. *Id.* There is no

contention that the State attempted to utilize, dwell on, or magnify the comment complained of, which was of an isolated nature. In addition, other than the statement in his brief that "[g]iven the circumstantial nature of the state's case, this error was particularly egregious," Defendant makes no effort to demonstrate that the evidence of his guilt was weak, or that the comment in question was prejudicial to him under the facts here.

 Finally, we note that although Defendant's request for a mistrial was denied, he specifically declined a suggestion that the trial court instruct the jury to disregard the comment in issue. As we said in *State v. Walls,* 911 S.W.2d 645, 648 (Mo. App. S.D.1995), it is the duty of the trial court, who observed the testimony and is in a better position than an appellate court, to evaluate the prejudicial effect, if any. The fact that a defendant limits his request for relief to that of a mistrial rather than making a request for less drastic corrective action cannot aid him. *Id.*

We find no abuse of discretion by the trial court in its denial of a mistrial under the circumstances here. The second point is denied.

The judgment is affirmed.

BARNEY, C.J., and DARNOLD, S.J., concur.