STATE of Missouri, Respondent,

v.

Jeffrey A. GALINDO, Appellant.

No. 21848.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 19, 1998.

GARRISON, Presiding Judge.

Jeffrey A. Galindo ("Defendant") was convicted by a jury of statutory sodomy in the first degree, § 566.062,[1] and was sentenced to life imprisonment. On this appeal, he contends that the trial court erred in permitting two witnesses to testify about statements made to them by K.C. (the four-year-old "victim"); in denying his motion for a mistrial because a witness violated a ruling in limine; and that it committed plain error in permitting an examining doctor to testify that her opinion of sexual abuse was based in part on what the victim told her. We affirm.

Defendant does not contest the sufficiency of the evidence to support the verdict. Viewed in the light most favorable to the verdict, the evidence is that Defendant was babysitting with the victim and two other children on September 16, 1996 in a house trailer. The victim's aunt, Katina Wayne, went to the house trailer hoping to surprise her niece. One of the other children told Ms. Wayne that the victim was in the bathroom with Defendant. When she opened the bathroom door, she found Defendant sitting on the stool with his pants around his ankles and the victim standing in front of him with her pants pulled down. Ms. Wayne took the victim to her car where the victim told her that Defendant had placed his fingers in her "Moo-mo," which victim described by pointing to her genital area, and had made her lick his "thing."

The victim was taken to Dr. Preuschoff who examined her and found red circles on her back and also red, raw looking, marks near her vagina. Defendant was subsequently arrested and gave a statement to officers admitting that he had touched the victim in her "private parts" and had placed his hand in her panties.

■ In the first of his three points on appeal, Defendant contends that the trial court erred in permitting Dr. Preuschoff to testify that, based on her physical findings and what the victim told her, it was her

Douglas R. Hoff, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Meghan J. Stephens, Asst. Atty. Gen., Jefferson City, for Respondent.

1. Statutory references are to RSMo 1994, and all rule references are to Missouri Rules of Criminal Procedure (1998), unless otherwise indicated.

opinion that the victim had been sexually assaulted. He argues that this testimony impermissibly bolstered the victim's statements given to both the doctor and Ms. Wayne, and that it invaded the province of the jury.

During trial, Dr. Preuschoff testified that K.C. told her that Defendant did "nasty stuff" to her; that he licked his finger and placed it in her "Moo-mo," pointing to her genitalia; that he made her suck his "wee-wee;" and that he told her not to tell. No objection was made to this testimony. The doctor then testified that based on the physical exam and what the victim told her, it was her conclusion, to a fair medical certainty, that the victim was sexually assaulted. Defendant objected to this testimony on the basis that the doctor had already testified that she could not make such a determination "for certain." Defendant did not, however, object to the testimony for the reasons he now argues on appeal.

An assignment of error on appeal regarding the admission of evidence at trial must be based upon the theory stated in the objection at trial, and an accused cannot expand or change on appeal the objection as made at trial. *State v. Potter*, 747 S.W.2d 300, 303 (Mo.App. S.D.1988). Recognizing that he did not preserve the issue for review on appeal because he failed to object on the basis now argued, Defendant requests that we review the point for plain error. Under Rule 30.20 this court has the discretion to review for plain errors affecting substantial rights. When seeking plain error review, a defendant must show that the trial court's action was erroneous and that the error had such a substantial effect upon the accused's rights that a manifest injustice or a miscarriage of justice would result if the error was not corrected. *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo.banc 1989). An accused bears the burden of establishing manifest injustice. *State v. DeJournett*, 868 S.W.2d 527, 531 (Mo.App. S.D.1993). Plain error is not synonymous with prejudicial error, and appellate courts use the plain error rule sparingly and only in those cases where there is a strong, clear demonstration of a manifest injustice or a miscarriage of justice.

*State v. Varvera*, 897 S.W.2d 198, 201 (Mo. App. S.D.1995).

Defendant's theory concerning this point is indicated by the following statement from his brief: "The doctor's testimony should not have been permitted because she improperly vouched for [the victim's] credibility, thus invading the province of the jury as the sole finder of fact and judge of believability of the witnesses." In support, Defendant cites *State v. Taylor*, 663 S.W.2d 235 (Mo.banc 1984), a rape case in which a psychiatrist testified that, based on the victim's verbal and nonverbal responses to his questions three months after the incident, in his opinion she suffered from rape trauma syndrome brought on by the rape incident described by her. *Id.* at 236. The Missouri Supreme Court reversed the conviction and remanded the case for retrial based on the psychiatrist's testimony. The issue in *Taylor* was whether evidence that a rape victim suffers from rape trauma syndrome is admissible as evidence that the intercourse was not consensual. *Id.* at 237. In deciding that it was error to admit the testimony, the court noted that expert opinion testimony is not admissible as it relates to the credibility of witnesses, and that the psychiatrist's testimony vouched too much for that of the victim. *Id.* at 239–40. The court specifically referred to the psychiatrist's testimony that his diagnosis was based on his belief of what the victim told him, and that his opinion was that she had not fantasized the rape. *Id.* at 240–41. The court concluded that the most the doctor could have testified to was that the victim's symptoms were consistent with a traumatic experience, even a stressful sexual experience, but that he could not say that she was raped by the defendant at the time and place alleged. *Id.* at 241. Significantly, the court noted that the evidence in question had repeatedly been challenged by the defendant. *Id.* at 240.

*Taylor* is distinguishable from this case. Not only are we reviewing for plain error, but here Dr. Preuschoff based her conclusion that the victim had been sexually assaulted on both what the victim said and a physical examination. In reaching her conclusion, Dr. Preuschoff did not render an opinion about

whether it was committed by Defendant. *See State v. Silvey*, 894 S.W.2d 662, 671 (Mo.banc 1995). It is also clear from the doctor's testimony that the physical findings resulting from the examination were consistent with the history given by the victim.

■ Expert testimony that comments directly on a particular witness' credibility should not be admitted. *Taylor*, 663 S.W.2d at 239; *State v. Williams*, 858 S.W.2d 796, 800 (Mo.App. E.D.1993). Dr. Preuschoff's testimony, however, did not constitute a direct comment on the victim's credibility. Likewise, she did not offer her opinion as to the victim's credibility or the Defendant's culpability. *See Silvey*, 894 S.W.2d at 671. An expert has been permitted to testify, based on his review of medical records containing historical information and physical findings, that two young girls had been subjected to sexual abuse. *State v. Hendrix*, 883 S.W.2d 935, 940 (Mo.App. W.D.1994). Furthermore, absent a proper objection, the admission of evidence which may have the effect of bolstering the testimony of a child is not plain error. *State v. Mackey*, 822 S.W.2d 933, 938 (Mo.App. E.D.1991). Under the circumstances here, we find no plain error resulting in a manifest injustice or a miscarriage of justice. The first point is denied.

■ In his second point, Defendant contends that the trial court erred in overruling his objections to the testimony of Dr. Preuschoff and Ms. Wayne about statements made to them by the victim. He argues that the statements were hearsay; that they did not possess a sufficient indicia of reliability to be admitted; and that because the victim was "for all intents and purposes unavailable to be cross-examined," the admission of the statements violated his rights to due process of law, to confront and cross-examine witnesses against him, and to a fair trial guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10, 18(a) and 21 of the Missouri Constitution.

Section 491.075 provides, in pertinent part:

1. A statement made by a child under the age of twelve relating to an offense under chapter 565, 566 or 568, RSMo, performed with or on a child by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if: (1) the court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and (2)(a) The child testifies at the proceedings; or (b) The child is unavailable as a witness; or (c) The child is otherwise physically available as a witness but the court finds that the significant emotional or psychological trauma which would result from testifying in the personal presence of the defendant makes the child unavailable as a witness at the time of the criminal proceeding.

In the instant case, after a hearing pursuant to § 491.075, the trial court held that under the factors referred to in section 1(1) of the statute, there was a sufficient indicia of reliability to make the victim's statements to Dr. Preuschoff and Ms. Wayne admissible. Defendant objected to the testimony at the time of the court's ruling, and also when Ms. Wayne and Dr. Preuschoff testified at trial.

The victim was called at trial but was not as responsive to the prosecutor's questions as she had been in talking with Ms. Wayne or Dr. Preuschoff. Much of her testimony was recorded by the court reporter as "shakes" or "nods" of her head. For instance she nodded her head when asked if she had been in the bathroom with Defendant. When asked what happened in the bathroom, she said that "he done bad things to me," and later she again said that "he done bad things to me and he didn't suppose to." When asked what Defendant did to her, the victim gave no response. The victim was also asked if she remembered talking with the doctor at the hospital and she nodded her head, and said "yes" when asked if she told the doctor. what had happened. When asked again to tell what happened, she said that she "was in the bathroom with [Defendant] and, huh—." There apparently was a pause after which the prosecutor asked her, "Just hard to say, isn't it?" to which she nodded her head.

In response to cross-examination by Defendant's trial counsel, the victim nodded her head when told that they were talking about "what happened with you and [Defendant]," and whether she remembered that day. She shook her head when asked if "it" had ever happened before or with anybody else. Although at one point in the questioning the victim nodded her head when asked if she had ever told anybody that "it" had happened with anybody else, she explained by saying that she had told her mother, dad, and aunt. She shook her head when asked if she had told them that "it" had happened with somebody else. When asked if Defendant was the only person she had "told that on," she nodded her head. Defendant's counsel then announced that he had no further questions, and raised no issue about the availability of the victim for cross-examination.

Although it is difficult to discern precisely from the argument portion of his brief, it appears that Defendant's contention is rooted in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), involving an Idaho statute which, somewhat like § 491.075, would have authorized the admission of statements which would otherwise have constituted inadmissible hearsay. In that case, the defendant was charged with lewd conduct with two minors, one of whom was a 2½ year-old girl. At trial, a doctor was permitted to testify about statements made to him by the 2½ year-old girl, who all parties agreed was incapable of communicating with the jury. The issue presented was whether the state, as the proponent of evidence presumptively barred by the hearsay rule and the Confrontation Clause, had satisfied its burden of showing that the victim's statements to the doctor bore sufficient indicia of reliability to withstand scrutiny under the right of the defendant to confront the witnesses against him. *Idaho v. Wright,* 110 S.Ct. at 3147. The Court noted that the requirement that evidence bear a sufficient indicia of reliability could be met in either of two ways. First, evidence which falls within a firmly rooted exception to the hearsay rule satisfies the requirement because of the weight accorded to longstanding judicial and legislative experience in assessing the trustworthiness of certain types of out of court statements. *Id.* These firmly rooted exceptions include such traditional exceptions as an "excited utterance," and a "dying declaration." *Id.* at 3149. The second method of providing a sufficient indicia of reliability to satisfy the Confrontation Clause is to support the hearsay statement with a showing of particularized guarantees of trustworthiness. *Id.* at 3147. The Court cited *Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986), for the proposition that hearsay statements that do not fall within a firmly rooted hearsay exception are "presumptively unreliable and inadmissible" under the Confrontation Clause, and *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), as authority that such statements must be excluded absent a showing of particularized guarantees of trustworthiness. *Id.* at 3148. In this regard, the Court noted that the Idaho statute which would have authorized the evidence was not a firmly rooted hearsay exception for Confrontation Clause purposes. *Id.* Therefore, it concluded that a showing of particularized guarantees of trustworthiness was required, but that it could not be satisfied by merely corroboration evidence. *Id.* at 3150–52.

Furthermore, in *Idaho v. Wright,* the Court noted that there was no issue in that case about whether the Confrontation Clause requires the prosecutor to show that a child witness is unavailable at trial before admitting the child's out-of-court statements. *Id.* at 3147. Rather, it assumed, without deciding, that for purposes of the Confrontation Clause, the victim was an unavailable witness. *Id.*

As we understand Defendant's contention here, it is that while the victim was physically present to testify, Defendant was deprived of the opportunity of cross-examining her in an effective way, and she was, therefore, "unavailable" as a witness. In support he cites *State v. Jankiewicz,* 831 S.W.2d 195 (Mo. banc 1992). There, the Missouri Supreme Court considered the victim to be "unavailable" for the purposes of an analysis under the Confrontation Clause because she was uncooperative, her answers were unresponsive, she gave no testimony which incriminat-

ed the defendant, and she provided no "meaningful testimony that could be the subject of effective cross-examination." *Id* at 198. The court noted, however, that defense counsel had preserved the issue by attempting to cross-examine the victim through appropriate questioning.

In the instant case, Defendant's trial counsel did not attempt to cross-examine the victim on the matters now in issue, i.e., the trustworthiness of her statements to Ms. Wayne or Dr. Preuschoff. We, therefore, consider this case factually closer to *State v. Hester*, 801 S.W.2d 695 (Mo.banc 1991), where statements by the child-victim to a detective were admitted pursuant to § 491.075. The *Hester* court noted that, in *State v. Wright*, 751 S.W.2d 48 (Mo.banc 1988), § 491.075 was held constitutional against claimed violations of the Confrontation Clause of the United States Constitution where the child-victim is subject to cross-examination. *Id.* at 696. In *Hester* the defendant contended that, unlike *Wright*, the victim had been unavailable to testify because, although she was present and answered two or three questions, she failed to respond to additional questions posed by the prosecutor. *Id.* at 697. The court noted, however, that no attempt was made to cross-examine the child and "[t]he court made no finding that the child was unavailable and defense counsel sought no determination to that effect." *Id.* The court then concluded:

> Reluctance to testify is not the equivalent of unavailability to testify. The child-victim was not shown to fall within any definition of the term "unavailable witness." Therefore, the distinction claimed by appellant between this case and [*State v.*] *Wright* does not exist. To restate the holding in [*State v.*] *Wright*, admitting a child-victim's out-of-court statements in evidence pursuant to § 491.075 is not a violation of due process, equal protection of the law or the right to confrontation under the United States Constitution in a case in which the victim is available and produced at trial.

*Id.*

In this case, although the victim was produced and testified, albeit somewhat timidly,

she was available for cross-examination. Although she answered all but one of Defendant's questions in one form or another, Defendant made no effort to cross-examine her in any way on the contents of her statements to Ms. Wayne or Dr. Preuschoff. Instead, his cross-examination was primarily directed to whether the victim had made similar accusations against others, a concept which she denied. We do not consider, therefore, that the victim here was unavailable for Confrontation Clause purposes. Pursuant to *State v. Wright* and *Hester*, Defendant's contention is not well taken. Defendant's second point is denied.

■ Defendant's third and final point is directed at the trial court's failure to declare a mistrial when a witness made reference to a matter that the court had ordered excluded in ruling on a motion in limine. Prior to trial, the court granted Defendant's motion in limine in which he sought to exclude any evidence concerning the alleged finding of a pubic hair on the victim's body. Apparently, there was an indication in investigative reports that a pubic hair had been found on the victim, but subsequent lab tests demonstrated that it was actually a head hair. The State announced that it had no objection to the motion being sustained, and it agreed to remove any reference to the pubic hair from exhibits which would be introduced at trial. The State also agreed to brief Dr. Preuschoff, who had apparently found the hair, not to mention it.

A deputy sheriff testified, on direct examination by the State, that Defendant had admitted touching the victim's private parts. When asked if Defendant made any other admissions, the following occurred:

> A: After he wrote the statement there were a couple of other issues based on the report from the physician at the hospital that concerned me and so I asked him, I asked him was his hand inside her panties or out and I think it was, was his hand inside and he said yes and the doctor had indicated that there was a pubic hair found in her hands—
>
> [Defendant's attorney]: Your Honor, I'm going to object to that.
>
> Court: Sustained.

[Defendant's attorney]: Your Honor, may we approach?

Court: Yes. Before you approach let me instruct the jury to disregard the last comment by the deputy. Anything else?

Further proceedings then occurred in chambers where Defendant's attorney announced that he was not only asking that the deputy's statement be stricken and the jury instructed to disregard it, but he was also asking for a mistrial. The following then occurred:

[Prosecutor]: Of course, first of all I think that the initial intent, and certainly the state complied absolutely with that, was to tell Dr. Preuschoff not to mention this. This came out of the blue to us too. I wasn't even aware that he knew what the doctor had said, but more importantly the Court I think has taken appropriate action.

Court: Okay. I have already instructed them to disregard the comment. I understand and I think the state had even indicated they were not going to try to put this in. Based upon the way it came in and what I observed during testimony by the deputy I don't see any intentional intent for the state to get this in. I have instructed the jury to disregard it. Your Motion For Mistrial is denied. I think I have already granted the relief you requested and let's move on.

The trial court then again instructed the jury to disregard the last statement by the deputy.

The declaration of a mistrial is a drastic remedy which should be utilized only when there has been a grievous error that cannot be remedied otherwise. *State v. Leisure*, 810 S.W.2d 560, 571 (Mo.App. E.D. 1991). Whether to grant a mistrial is largely a matter for the trial court's discretion because it is in a better position to determine any prejudicial effects from the alleged error. *Id.* "In order to hold that the failure to grant a mistrial was reversible error, we must conclude, after reviewing the entire record, that as a matter of law the error was so prejudicial that its effect was not removed by the trial court's action." *Id.*

In the instant case, the testimony complained of was not responsive to the State's questions, it was an isolated occurrence and was not emphasized, the trial court promptly sustained Defendant's objection and instructed the jury to disregard the comment, and there was substantial other evidence of guilt. Additionally, the trial judge announced that he found no intent on the State's part to get the information before the jury. Under these circumstances we are unable to conclude that the trial court abused its discretion in denying the motion for a mistrial. *See State v. Smith*, 934 S.W.2d 318, 320–22 (Mo.App. W.D.1996). Point three is denied.

The judgment is affirmed.

PREWITT and CROW, JJ., concur.