**STATE of Missouri, Respondent,**

v.

**Andres Eutimio SMITH, Appellant.**

**No. WD 62834.**

Missouri Court of Appeals, Western District.

June 22, 2004.

Ellen H. Flottman, Assistant Public Defender, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Andres Eutimio Smith appeals the judgment of his convictions, after a jury trial in the Circuit Court of Saline County, on Count I for statutory rape in the first degree, § 566.032,[1] and on Counts II–IV for statutory sodomy in the first degree, § 566.062. As a result, the appellant was sentenced to consecutive prison terms, in the Missouri Department of Corrections, on Counts I and II of life, and on Counts III and IV of forty and twenty years, respectively.

In his sole point on appeal, the appellant claims that the trial court plainly erred in allowing: (1) live testimony of a Division of Family Services (DFS) social worker concerning her interview of the victim; and (2) a videotape of an interview of the victim by a child forensic interviewer, because it constituted improper bolstering of the victim's testimony concerning her allegations against the appellant of statutory rape and sodomy, effectively allowing her to testify three times.

Affirmed.

## Facts

On July 8, 2002, Detective Chris Lester of the Marshall, Missouri, police department was dispatched to the home where the appellant lived with his wife, Veronica Smith, along with a number of stepchildren, including his ten-year-old stepdaughter, G.H., his nine-year-old stepson M.H., and his eight-year-old stepson L.H. When Detective Lester arrived at the Smith home, he was told by the appellant's wife that she believed that the appellant had abused G.H. G.H. had a small bruise on her cheek, and the appellant's wife said that the injury occurred when G.H. and the appellant were playing on the bed, and the appellant got angry and shoved G.H.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

She further explained that M.H. had told her that the appellant had taken G.H. into a bedroom a couple of times and locked the door. M.H. could see through a crack in the door, and he saw G.H. on top of the appellant, and he could see that G.H. had her pants off and her legs spread open. Detective Lester asked the appellant's wife to bring the children to the police station.

Kerry Carney, a DFS social worker, interviewed G.H. at the police station. G.H. told Carney that the appellant had been "bothering" her. Carney asked G.H. what she meant by "bothering," and G.H. replied that "he touches me and tries to get me naked." Carney inquired where the appellant had touched her, and G.H. indicated her vaginal area and her buttocks. Carney asked G.H. whether her clothes were on or off when these incidents occurred, and G.H. said both, and that the appellant had taken her clothes off twice. G.H. stated that the incidents had occurred in her bedroom and the appellant's bedroom.

During the interview, G.H. told Carney that one incident had occurred two weeks earlier, in which the appellant had "touched her privates on the inside and on the outside." G.H. also mentioned another incident which had occurred four weeks earlier, in which the appellant had "touched her on the butt with his privates," and made her get on top of him. G.H. also related that a third incident had occurred on the day of the interview, in which the appellant "made her touch his privates with her hand." G.H. explained that these incidents occurred when her mother was at work.

Carney asked G.H. if the appellant had ever "put anything on his privates when he was bothering her," and G.H. replied that the appellant put on some red substance that smelled like cherry. G.H. said that the appellant kept the red substance on a shelf by the window in his bedroom. G.H. also said that the appellant told her that if she ever said anything to anyone about these incidents, he would "get out of jail and he would get her."

Carney also interviewed M.H., who described an incident when he went into a bedroom and saw the appellant with his hand on G.H.'s bottom, and saw that G.H. did not have pants on. M.H. reported another incident when he heard G.H. scream and went into her bedroom, where he saw the appellant and G.H. lying on the bed with their clothes on. The appellant jumped up and left the room when M.H. opened the door. M.H. also described a third incident when he was sleeping in the living room, and he woke up and saw the appellant go into G.H.'s bedroom. M.H. said that he went to the room and peeked through the door, and that the appellant "jumped up" when he saw M.H. looking into the room.

A day or two later, Detective Lester returned to the Smith residence, to conduct further investigation, and the appellant's wife consented to a search of the premises. In a basket in the appellant's bedroom, he found a bottle of lotion called "Passion Fruit Sex on the Beach" liquor-flavored lotion, along with a bottle of "Renshen Pseudo Spanish Fly Liquid Orgy Orange," and a plastic squeeze bottle labeled "Hot Hooters Warming Boobie Oil."

On July 9, 2002, G.H. was interviewed at Childsafe, a child advocacy center in Sedalia, Missouri, by Maria Mittelhauser, who was a Juvenile Officer for Pettis and Cooper Counties. On that same date, M.H. and L.H. were interviewed at Childsafe by Sharon Mills, a DFS social worker who was employed part-time at Childsafe. The three interviews were videotaped, and the videotaped interviews were played for the jurors at the appellant's subsequent trial.

On August 12, 2002, the appellant was charged by indictment with one count of statutory rape in the first degree, and three counts of statutory sodomy in the first degree. The appellant was tried on these charges on March 26–27, 2003. Lester testified as a witness for the State, and recounted his role in the investigation, as described *supra.* Carney then testified on behalf of the State, and recounted her interviews with G.H. and M.H., as described *supra.*

G.H. then testified as a witness for the State, and indicated that the sexual contact started in December of 2001, when the appellant came into her room "and just started bothering me." When asked what she meant, G.H. said that the appellant was touching her "in [her] front private" while she had her clothes on. G.H. testified further that, in January or February of 2002, the appellant pulled down his pants and her pants and started touching her "on my front private and back private" with his hands. G.H. also stated that the appellant touched her with his penis, which he placed in her mouth and "on [her] private." G.H. was asked if "anything ever came out while he was doing that," and she replied that, on three or four occasions, that happened when the appellant was touching her in her mouth, "on [her] front privates," and when he was touching her "on [her] back private." G.H. also testified that the appellant told her that if she told anyone about these incidents, "he would just deny it and that my mom would believe him." In addition, G.H. stated that the appellant sometimes would put a cherry-scented lotion "on his private."

The State also played, for the jury, portions of the videotaped statements of G.H.,

M.H., and L.H. taken at Childsafe. The appellant made a hearsay objection to the admission of the videotape, but did not challenge the videotape on the ground that it would improperly bolster any of the children's trial testimony.

After deliberating, the jury returned verdicts finding the appellant guilty of all charges. On April 22, 2003, the appellant filed a motion for a new trial which included the claim that G.H.'s statements to Carney, and her videotaped statement, constituted improper bolstering of her trial testimony, but the motion was filed out of time. On April 29, 2003, the appellant was sentenced to a term of life imprisonment for the statutory rape conviction, and terms of life imprisonment, forty years imprisonment, and twenty years imprisonment for the three statutory sodomy convictions, with the sentences to be served consecutively in the Missouri Department of Corrections.

This appeal followed.

## I.

■ In his sole point on appeal, appellant claims that the trial court plainly erred in: (1) allowing the live testimony of a DFS social worker, Kerry Carney, concerning her interview of the victim; and, (2) admitting State's Exhibit 17, a videotape of an interview of the victim by a child forensic interviewer, Maria Mittelhauser, because they constituted improper bolstering of the victim's testimony concerning her allegations against the appellant of statutory rape and sodomy, effectively allowing her to testify three times.

The appellant concedes that his claim of error was not properly preserved for appellate review, but seeks plain error review, in accordance with Rule 30.20.[2] We

2. All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless other-

wise indicated.

decline plain error review in that it is well settled in the law that the admission of evidence that has the effect of bolstering the testimony of a child victim is not plain error. *State v. Mann,* 35 S.W.3d 913, 915–16 (Mo.App.2001); *State v. Galindo,* 973 S.W.2d 574, 577 (Mo.App.1998); *State v. Brown,* 912 S.W.2d 643, 645 (Mo.App. 1995); *State v. Mackey,* 822 S.W.2d 933, 938 (Mo.App.1991). And, in any event, it is clear · that the admission of evidence challenged here was not error, let alone plain error.

■ Our review of the trial court's decision to admit Carney's testimony concerning her interview of the victim is limited to a determination of whether the decision amounted to an abuse of discretion, and the trial court's decision will be affirmed unless there is not a reasonable basis in the record for it. *State v. Sanders,* 126 S.W.3d 5, 13 (Mo.App.2003). The same standard of review governs our review of the trial court's decision to admit the victim's videotaped statements. *Id.* A trial court's decision to admit evidence is an abuse of discretion when it is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *State v. Thompson,* 112 S.W.3d 57, 63 (Mo.App.2003).

■ In this case, the appellant is challenging the trial court's evidentiary rulings on the basis of improper bolstering. Improper bolstering occurs when an out-of-court statement of a witness is offered solely to duplicate or corroborate trial testimony. *State v. Wolfe,* 13 S.W.3d 248, 257 (Mo. banc 2000). However, if the out-of-court statement is offered for relevant purposes other than corroboration and duplication, there is no improper bolstering. *Id.*

In claiming that the trial court erred in admitting the challenged evidence, the appellant relies upon *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987). There, the Missouri Supreme Court held that it was improper bolstering for the prosecution to first introduce the victim's videotaped statement and then call the victim to the stand to testify because the testimony "covered the same precise ground." *Id.* at 441. The appellant contends that Carney's live testimony and the videotape were wholly duplicative of the victim's testimony such that it effectively allowed the victim to testify three times at trial, violating the bolstering rule of *Seever.* We disagree.

As to the admission of the victim's videotape statement, Exhibit 17, § 492.304, the statute under which it was admitted, expressly provides that: "If the visual and aural recording of a verbal or nonverbal statement of a child is admissible under this section and the child testifies at the proceeding, it shall be admissible *in addition* to the testimony of the child at the proceeding *whether or not it repeats or duplicates the child's testimony.*" § 492.304.3 (emphasis added). Thus, in admitting the videotape, the trial judge, here, was simply following the mandate of § 492.304.3 and, therefore, did not err in doing so. *Mann,* 35 S.W.3d at 915–16.

Section 492.304.3 did not exist at the time *Seever* was decided. However, it did exist when the Court decided *State v. Silvey,* 894 S.W.2d 662, 672 (Mo. banc 1995), where it clarified the *Seever* bolstering rule, stating that: "What *Seever* prohibits is the use of such a videotape to wholly duplicate the live testimony of the child witness." *Id.* Although *Silvey* did not involve the introduction of a videotape, under § 492.304, such that the Court's discussion of *Seever* may simply be *dicta,* it would seem to indicate that *Seever* may still have some vitality, even in the face of

the express language of § 492.304.3. However, it should be pointed out that there is absolutely no discussion in *Silvey* of § 492.304.3 and what it means with respect to the bolstering rule of *Seever*. And, the *Mann* court, in holding that the express provision of § 492.304.3 authorized the admission of the victim's videotape, "whether or not it repeats or duplicates" the victim's live testimony, made no mention of *Silvey*.

Even assuming, *arguendo*, that *Seever* still has some vitality in light of § 492.304.3, it would not work to preclude the videotape here in that the videotaped statements were informal and not planned as a substitute for the victim's testimony. *State v. Gollaher*, 905 S.W.2d 542, 546 (Mo.App.1995). Moreover, the appellant has not demonstrated that he is entitled to relief on this claim because he offers no specifics in support of his argument that the videotaped statement is wholly duplicative, making only a conclusory generalization. *State v. Bradley*, 8 S.W.3d 905, 906 (Mo.App.2000) (holding that it is not the duty of the appellate court to comb the record searching for the basis of the claimed error).

As to the admission of the social worker's testimony concerning her interview of the victim, her testimony was admissible under § 491.075, which creates a hearsay exception for statements made by sexual abuse victims under the age of twelve. *Silvey*, 894 S.W.2d at 672. The admission of such statements is not considered improper bolstering and does not violate the *Seever* prohibition because the statements were not planned as a substitute for the victim's testimony at trial and were not wholly duplicative of the victim's trial testimony. *Silvey*, 894 S.W.2d at 672 (holding that hearsay statements did not violate the bolstering rule of *Seever* in that they "were informal and not planned as a substitute for [the victim's] testimony, did not

improperly bolster [the victim's] testimony because the statements, even taken together, did not repeat [the victim's] testimony to the extent that it had the effect of allowing [her] to testify twice").

In *State v. Skipper*, 101 S.W.3d 350, 353–54 (Mo.App.2003), the court held that live testimony of an interviewer concerning out-of-court statements made by a child victim, that were admissible under § 491.075, and the circumstances surrounding the interview, which support the "consistency" of the victim's statements, has probative value separate and apart from the victim's statements such that its admission does not violate the bolstering rule of *Seever*. See also *Gollaher*, 905 S.W.2d at 545–46. The same is true here. Carney's testimony did not consist solely of a regurgitation of the same allegations and statements of the victim's live testimony. Rather, as the respondent notes in its brief, Carney described the circumstances surrounding the interview, offering probative value apart from the victim's out-of-court statements. Hence, Carney's testimony concerning the victim's out-of-court statements did not constitute improper bolstering such that the trial court did not err in allowing it, as claimed by the appellant.

Point denied.

## Conclusion

The judgment of the circuit court, convicting the appellant of statutory rape in the first degree and three counts of statutory sodomy in the first degree, is affirmed.

ULRICH, P.J., and LOWENSTEIN, J., concur.