**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert J. TANNER, Defendant–Appellant.**

No. 27656.

Missouri Court of Appeals, Southern District, Division Two.

April 27, 2007.

Daniel E. Leslie, Union, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Daniel N. McPherson, Assistant Attorney General, Jefferson City, for Respondent.

PHILLIP R. GARRISON, Judge.

Robert J. Tanner ("Defendant") appeals a jury conviction of two counts of first degree statutory sodomy, violations of Section 566.062.[1] He contends that the trial court erred in admitting a videotaped interview of one of the victims because the requirements of Section 491.075 were not met, and in denying his motions for acquittal at the close of the State's evidence. We affirm.

Viewed in the light most favorable to the verdict, the following evidence was adduced at trial. Defendant married Tabitha Tanner ("Tabitha") on March 16, 2000. Tabitha had a son, J.H., who was about eight years old at the time. During the marriage Tabitha gave birth to a daughter, S.T., who was fathered by another man. The couple separated around June 30, 2001, and eventually divorced. At the time of the separation, J.H. was almost ten years old and S.T. was fourteen months old. Defendant continued to see S.T. after the divorce and S.T. called Defendant "Daddy" or "Bom."

After the separation, Defendant was living with his mother, Cecelia Tanner ("Cecelia"), in Cuba, Missouri. S.T. would stay overnight at the house when she visited, and J.H. would also spend time with Defendant at Cecelia's house.

In August 2003, Dawn Hawkins ("Hawkins"), Tabitha's adopted grandmother, was babysitting for S.T. when S.T. made some statements that concerned Hawkins. Hawkins made a hotline call to the Division of Family Services ("DFS"), and on August 27, 2003, S.T. was interviewed at the Children's Advocacy Center of East Central Missouri by Dina Vitoux ("Vitoux"), a forensic interviewer. During the interview, S.T. told Vitoux that "Bob" or "Bom" had "licked her on her coot," which was the name S.T. used to describe her private part.

On September 16, 2003, Vitoux interviewed J.H. He told Vitoux, that Defendant had talked to him about sex, explained to him what sex was, told him how all the body parts were used during sex, and showed him pornographic videos. J.H. revealed that Defendant had masturbated in front of him, made J.H. put his hand on Defendant's penis, and had J.H. help Defendant masturbate. Defendant also talked to J.H. about oral sex, explaining what it was, how it was done, and then

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

performed oral sex on J.H. Vitoux testified that J.H.'s statement was "very detailed."

Defendant was charged with two counts of statutory sodomy in the first degree, in violation of Section 566.062. Count I was for his alleged actions towards S.T., and Count II was for his alleged actions towards J.H. The case was tried before a jury and Defendant was found guilty on both counts. He was sentenced to consecutive sentences of ten years imprisonment on Count I and life imprisonment on Count II. Defendant now appeals.

■ Defendant's first point on appeal claims the trial court erred in admitting State's Exhibit II, the videotaped statement that S.T. gave to Vitoux, because the tape lacked sufficient indicia of reliability as required by Section 491.075.1(1). Specifically, Defendant claims that because the drawings and graphics S.T. used to refer to certain body parts cannot be seen on the videotape, there was no basis from which the trial court could find that the statements were sufficiently reliable.

■ Defendant has not presented this Court with State's Exhibit II. Rule 30.05 [2] governs the production of exhibits in appellate courts. It states that "[a]ny exhibits not filed . . . may be considered by the court as immaterial to the issues on appeal." Defendant had the duty to "file a complete record including all evidence necessary to determine all questions presented to this Court for review." *State v. Morin*, 873 S.W.2d 858, 867 (Mo.App. S.D. 1994).

■ "An appellate court will not convict a trial court of error for receiving in evidence an exhibit not produced as part of the record on appeal or filed separately in the appellate court as authorized by Rule 30.05." *Id.* This is especially true in this case where Defendant's point claims that certain actions by S.T. are not visible on the videotape. It is impossible for us to determine if S.T.'s actions are in fact visible or whether an obscured view has any effect on the statement without actually being able to watch the videotape. Defendant's failure to supply this Court with a sufficient record on appeal requires our denial of his first point. *Id.; State v. Shire*, 850 S.W.2d 923, 932 (Mo.App. S.D. 1993).

Defendant's second point also claims the trial court erred in admitting State's Exhibit II. As stated, his failure to provide this Court with said exhibit ordinarily would preclude Defendant from receiving any relief. However, in his second point, Defendant claims the trial court erred in admitting the videotape because S.T. did not "testify" at the trial as required by Section 491.075.1(2). Because we can discern from the transcript that S.T. did in fact "testify" at the trial, we are able to address this point even though the videotape itself is not before us.[3]

■ Rule 29.11(d) states that in jury-tried cases, except for questions concerning jurisdiction, sufficiency of the indictment or information, and the sufficiency of the evidence, "allegations of error to be

---

**2.** All references to rules are to Missouri Rules of Criminal Procedure (2006) unless otherwise indicated.

**3.** We note that even if Defendant could show that the trial court erred in admitting the videotape because S.T. did not testify, his failure to file the videotape with this Court would most likely preclude us from finding prejudice associated with such error. We review a trial court's decision regarding the admissibility of evidence for prejudice not mere error and will reverse only if an error was so prejudicial it deprived the defendant of a fair trial. *State v. Boydston*, 198 S.W.3d 671, 674 (Mo.App. S.D.2006).

preserved for appellate review must be included in a motion for new trial[.]" Therefore, a claim of error not raised in a motion for new trial is not preserved for our review. *State v. Stephens,* 88 S.W.3d 876, 880 (Mo.App. W.D.2002).

■ In his motion for a new trial, Defendant claimed the trial court erred "in finding that State's Exhibit 2 . . . was admissible under Section 491.075 . . . in that there was not sufficient indicia of reliability of the statement as to the time, content and circumstances."[4] His second point on appeal does not claim that the videotape lacks sufficient indicia of reliability, as required by Section 491.075.1(1), but rather claims it was inadmissible because S.T. did not testify, as required by 491.075.1(2). Because Defendant did not raise this claim of error in his motion for new trial it was not preserved for our review. Discretion rests with this Court to review his claim for "plain error" under Rule 30.20. *State v. Boydston,* 198 S.W.3d 671, 675 (Mo.App. S.D.2006).

■ We use plain error review sparingly and limit it only to those cases where there is a clear demonstration of manifest injustice or miscarriage of justice. *State v. Coker,* 210 S.W.3d 374, 385 (Mo.App. S.D. 2006). We review claims for plain error under a two-prong test. *Id.* "In the first prong, we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear. If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id.* (internal citations and quotations omitted). Defendant bears the burden of showing plain error has occurred. *Id.*

■ "Section 491.075 allows admission, under certain circumstances, of out-of-court statements made by a child victim regarding sex offenses." *State v. Justus,* 205 S.W.3d 872, 875 (Mo. banc 2006). A trial court is required to hold a hearing to determine that "the time, content, and circumstances of the statement provide sufficient indicia of reliability." Section 491.075.1(1). "In addition, the child must either (1) testify at the proceeding, (2) be an unavailable witness, or (3) must be 'unavailable' due to significant emotional or psychological trauma as a result of being in the defendant's presence or because the defendant caused the unavailability." *Justus,* 205 S.W.3d at 875 n. 3; Section 491.075.1(2). In this case, the trial court held a hearing and determined that S.T.'s statement was sufficiently reliable. S.T. also was called at trial as a witness for the State in an effort to comply with Section 491.075.1(2)(a). Defendant claims that even though S.T. was called as a witness she did not "testify" as required by statute.

After S.T. was called as a witness for the State, during direct examination the following dialogue took place:

Q: Hi there.

A: Hi.

Q: Can you tell me your name again?

A: [S.T.]

Q: Did they used to call you Katie Bug?

A: (Moves head up and down.)

Q: You don't use that anymore, though, do you because you're too big a girl, is that right?

A: (Moves head up and down.)

Q: [S.T.]—I'm sorry, [S.T.], how old are you?

A: Five.

---

4. Defendant appealed this claim of error in his first point on this appeal.

Q: [S.T.], do you remember going to a place with your mom and talking to a lady named [Vitoux]. [Vitoux], come here just a minute. Do you remember going to a place and meeting [Vitoux] and talking to her a little bit in a room where you drew some pictures and stuff?

A: (Moves head side to side.)

Q: Okay. Do you remember your mom taking you where they had a big easel and they showed you some pictures, do you remember that?

A: No.

Q: No? Okay. [S.T.], who's your dad? Can you tell me his name?

A: Bob.

Q: Do you remember telling [Vitoux] some things about Bob?

A: (Moves head side to side.)

Q: Have you ever lied about Bob?

A: (Moves head side to side.)

Q: Okay. Kind of scary to be here today, isn't it?

A: (Moves head up and down.)

Q: A little bit. You don't need to be scared. A lot of people in the room aren't there?

A: (Moves head up and down.)

Q: I know that's scary. Sometimes it's kind of scary for me, too, with all these people in the room, and I'm a pretty big guy, too. [S.T.], when people asked you questions about your dad did you always tell the truth? Thank you, dear. That's all the questions I have.

Then the following dialogue took place during cross-examination:

Q: [S.T.], can you see me?

A: (Moves head up and down.)

Q: My name's Jim. [S.T.]'s a pretty name, and that's the name you use now, is that right?

A: (Moves head up and down.)

Q: You're four—are you four years old now?

A: (Moves head side to side.)

Q: How old are you [S.T.]?

A: Five.

Q: Five. Are you going to school yet?

A: (Moves head up and down.)

Q: Do you know which school you go to?

A: (Moves head up and down.)

Q: Does it have a name? I see. When [Prosecuting Attorney] asked you about your dad and he said that you told the lady about him, where did that happen, the things you said happened to you that your dad did?

A: I don't know.

Q: Don't know? I don't have any further questions, Your honor.

The State did not redirect and S.T. was excused.

Defendant claims that this exchange does not rise to the level of "testify" as required by the statute. Defendant claims that for S.T. to "testify" she would need to have given evidence establishing or proving some fact. We find that S.T. did "testify" as required by Section 491.075.

"The [S]tate has a strong interest in protecting children, and child abuse presents unusual evidentiary problems because the victim's testimony is often the only direct evidence linking the accused to the crime." *State v. Wright*, 751 S.W.2d 48, 52 (Mo. banc 1988). Section 491.075 "reflects a policy determination that in some child abuse cases the victim's out-of-court statements may possess sufficient probative value to contribute to the judicative process; indeed, such statements may on occasion be *more* reliable than the child's testimony at trial, which may suffer distortion by the trauma of the courtroom set-

ting or become contaminated by contacts and influences prior to trial." *Id.* (emphasis in original). Also "[i]t is not uncommon for there to be some contradiction or memory lapses during the testimony of a child of tender years." *State v. Benwire,* 98 S.W.3d 618, 624 (Mo.App. W.D.2003) (quoting *State v. Griggs,* 999 S.W.2d 235, 242 (Mo.App. W.D.1999)).

While we do not find any case directly on point, we find the analysis in *State v. Galindo,* 973 S.W.2d 574 (Mo.App. S.D. 1998), persuasive. In *Galindo,* the defendant argued that the statements the victim made to her aunt and a doctor, brought in under Section 491.075, violated the Confrontation Clause,[5] because while the victim was physically present to testify, she provided no meaningful testimony that could be the subject of effective cross-examination. *Id.* at 575–79. The court stated that "[r]eluctance to testify is not the equivalent of unavailability to testify." *Id.* at 579 (quoting *State v. Hester,* 801 S.W.2d 695, 697 (Mo. banc 1991)). It then held that "although the victim was produced and testified, albeit somewhat timidly, she was available for cross-examination." *Galindo,* 973 S.W.2d at 579. Specifically, the defendant during cross-examination could have asked questions concerning her statements to her aunt and the doctor, but chose not to. *Id.* The court, therefore, denied defendant's Confrontation Clause claim. *Id.*

In this case, we find that S.T.'s reluctance to testify, especially considering her young age, is not the same as not testifying. Her statements even comply with Defendant's proposed definition of "testify" because she established and proved various facts. She clearly stated that she was five years old. This is important because in order for Defendant to violate Section 566.062 he would need to have deviate sexual intercourse with another person less than fourteen years old. S.T. also stated that she viewed Defendant as her "dad." Finally, S.T. was available on the stand and Defendant could have, if he so chose, to cross-examine her more vigorously about the statements she made in the videotape. His failure to do so cannot now be challenged by stating that S.T. did not "testify."

The trial court did not evidently, obviously, and clearly err when it admitted the videotape into evidence because S.T. did in fact "testify" as required by Section 491.075. Therefore, there was no plain error. Defendant's second point is denied.

Defendant's third and fourth points on appeal claim the trial court erred in denying his motion for judgment of acquittal on both counts filed at the close of the State's evidence. "Because [Defendant] presented evidence [on] his own behalf after the State rested, [he] waived any claim of error related to the denial of his motion at the close of the State's case." *State v. Purlee,* 839 S.W.2d 584, 587 (Mo. banc 1992). While Defendant did file a motion for judgment of acquittal after all evidence had been presented, he did not challenge the trial court's ruling on that motion in this appeal. "Appellate review is limited to issues presented by an appellant's point[s] relied on." *State v. Butler,* 88 S.W.3d 126, 128 (Mo.App. S.D.2002). Points three and four are denied.

The judgment of the trial court is affirmed.

BATES, C.J., and LYNCH, J., concur.

---

5. U.S. Const. amend. VI.