STATE of Missouri, Plaintiff–
Respondent,

v.

Gary Owen PLASTER, Jr.,
Defendant–Appellant.

No. SD 31370.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 28, 2013.

Ellen H. Flottman, Columbia, MO, for Appellant.

Gregory L. Barnes, Jefferson City, MO, for Respondent.

DON E. BURRELL, J.

Gary Owen Plaster, Jr. ("Defendant") was convicted following a jury trial of second-degree assault and armed criminal action. *See* sections 565.060 and 571.015.[1] Defendant claims on appeal that the trial court abused its discretion in admitting into evidence State's exhibit 30, which his brief describes as a "large butcher knife" ("the big knife").[2] Consistent with his trial objection and motion for new trial, Defendant claims the probative value of the big knife was "outweighed by its prejudicial impact" as it "had little connection to the charged offenses and evidence of other weapons is particularly prejudicial." Because the admission of the big knife was cumulative to other unobjected-to testimony about it, including Defendant's own, we affirm.

### Facts and Procedural Background[3]

On February 28, 2010, Mickel Haywood ("Victim") was squatting in an abandoned house in Springfield that was also frequented by other homeless people. Victim began drinking earlier that morning and was "pretty intoxicated" by the time he came back to the house. Stephanie Lanig, Jacob Thurston, Daniel Hopper, a female identified only as "Kylie," and Defendant were at the house with Victim that evening.

Before the big knife was admitted into evidence at trial, Lanig testified without objection that she saw Defendant display it while arguing with Hopper. Later that evening, Lanig was with Victim on a mattress on the floor in the kitchen of the house. When another man arrived, Defendant told him that if he had nothing to contribute to the group, such as cigarettes, money or alcohol, then he needed to leave. Overhearing the remark, Victim yelled from the kitchen to Defendant, who was in the living room, that Defendant "shouldn't be kicking anybody out, and if he wanted anybody kicked out, he should leave hi[m]self"

Defendant, saying something like Victim was "not going to punk him out[,]" went into the kitchen and took a swing at Victim, who was still on the mattress. Victim, who did not see any weapon, thought that Defendant had hit him in the chest. Lanig intervened, and Thurston and Kylie also tried to wrestle Defendant off of Victim. Victim moved "off the bed and found [himself] in a puddle of blood." Victim had been stabbed on his left side, and he was bleeding "[p]retty good." Lanig realized at this point that her hand had also been

---

1. Reference to section 565.060 is to RSMo Cum.Supp.2011; all other statutory references are to RSMo 2000. The trial court subsequently sentenced Defendant to serve concurrent, eight-year prison terms.

2. At trial, State's exhibit 30 was described in various ways. For instance, Springfield Police Officer Robert Schroeder described the knife as "a large 11-inch knife similar to a large kitchen knife." Jacob Thurston called it a "butcher knife," and Defendant called it "that big knife." We have adopted Defen-

dant's trial description and refer to it as "the big knife." It is undisputed that the big knife was not the knife Defendant used to stab Victim.

3. Defendant does not challenge the sufficiency of the evidence supporting his convictions. We view and relate the trial evidence in the light most favorable to the verdicts returned by the jury. *State v. Wright*, 247 S.W.3d 161, 163 (Mo.App. S.D.2008). We have limited our recitation of the facts to those necessary to resolve Defendant's point on appeal.

"puncture[d]" by a knife. The blade, "like [for] a steak knife," was still in her hand. A Springfield police officer later recovered a steak-knife handle from beside a mattress inside the house.

Lanig testified without objection that Defendant left the kitchen and returned with "a really big knife." Lanig said it was the same knife she had earlier seen Defendant "waving at" Hopper.[4] Defendant then told them that they "needed to get out of the house." Defendant said it was his house, he made the rules, and they did not belong there. Defendant specifically told Victim to get out of the house or he would kill him.

Victim, Lanig, and Thurston left the house and sought help at a nearby fire station. Victim was subsequently hospitalized, where surgery was performed to treat his injuries. Police responded to the house, and Defendant was arrested.

At trial, Lanig generally identified items, including the big knife, as being accurately depicted in photographs marked as State's exhibits 4 through 8. When the State offered the photographs into evidence, defense counsel objected. At the bench conference that ensued, Defense counsel stated that "this was something we took up in the motion in limine about" the big knife.[5] Defense counsel

argued that while Lanig's testimony indicated that she had seen the big knife, it was still "overly prejudicial and irrelevant to the case because no one was ever touched with th[e big] knife." The State disclosed that it also intended to offer the big knife itself into evidence. The trial court stated, "I'm showing that your objection goes to the photographs and for the actual knife. We will overrule that objection based on our discussions prior to trial, and we'll admit them." State's exhibits numbered 7 and 8 depicted the big knife as having reddish smears on the blade.[6]

Defense counsel indicated that the objection to the big knife would be renewed when the State was about to display it. The trial court replied, "All you have to do is say 'objection.'" Lanig went on to identify the big knife as being both the one "that was pulled out on [Hopper]" and the one "that [Defendant] went back into the living room for to scare—finish scaring us out of the house." At that point, the State formally offered the big knife into evidence. Defense counsel objected "based on the conversation we had previously and [Defendant's] motion in limine." The trial court overruled the objection and admitted the big knife (State's exhibit 30) into evidence.

---

4. Hopper testified that Defendant "got upset and started yelling and ordering people to leave." Hopper testified without objection that Defendant told him that he "had a knife in a backpack and that, if [Hopper] didn't leave, [Defendant] was going to threaten [him] with it." Hopper identified the big knife as the one Defendant had threatened him with.

5. Defendant's "third motion in limine" objected, inter alia, to any reference regarding "the existence of an 11 inch knife, found at [the house reported as the scene of the assault]." No transcript of a hearing on the motion in limine was included in the record on appeal, but a docket entry states that the

motion was "sustained." In its opening statement, the State (without objection from Defendant) told the jury it would hear that Defendant got "another knife" after stabbing Victim because Defendant "realized that the blade was no longer on the knife that he had in his hand. At that point he came back in that room and began threatening everybody with the knife that he had just retrieved." Also without drawing an objection, the State discussed how the big knife was later recovered by the police.

6. State's exhibits 7 and 8 were deposited with this court; the big knife was not.

Defendant testified in his own defense. He stated during direct examination that he had a "big knife" in his backpack, and while he denied being aggressive, he admitted showing it to the others that evening. Defendant also admitted that he and Victim "got in a scuffle" involving "a steak knife[,]" and Defendant testified that his own finger was cut in the fight.[7]

Verdict directors for both first-degree assault (requiring the jury to find that "[D]efendant attempted to cause serious physical injury to [Victim] by stabbing him") and second-degree assault (requiring the jury to find that "[D]efendant recklessly caused serious physical injury to [Victim] by stabbing him") were submitted to the jury. After deliberating, the jury found Defendant guilty of second-degree assault and armed criminal action. It also found Defendant not guilty of second-degree assault and armed criminal action regarding Lanig's injuries.[8]

Defendant's motion for new trial asserted, *inter alia*, that the trial court erred in admitting State's exhibits 4 through 8 and State's exhibit 30 over Defendant's objections. It also specifically asserted that "evidence of a large knife found at the scene of the incident" was "not relevant as it's [sic] prejudicial effect far outweighed its probative value" as "[i]ts only purpose . . . was to inflame the jury." Defendant's appeal timely followed his sentencing and the trial court's denial of his motion for new trial.

### Applicable Principles of Review and Governing Law

■■■ "The trial court has broad discretion to admit or exclude evidence at tri-

al[.]" *State v. Chaney,* 967 S.W.2d 47, 55 (Mo. banc 1998). We will reverse a trial court's ruling on the admission of evidence "only if the court has clearly abused its discretion." *State v. Madorie,* 156 S.W.3d 351, 355 (Mo. banc 2005). "A trial court's decision to admit evidence is an abuse of discretion when it is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Smith,* 136 S.W.3d 546, 550 (Mo.App. W.D.2004).

Evidence that is logically relevant is not necessarily admissible. The probative value of logically relevant evidence must be weighed against the risks it poses of unfair prejudice, cumulativeness, confusion of the issues, misleading the jury, undue delay or waste of time. *[State v.] Anderson,* 76 S.W.3d [275,] 276 [ (Mo. banc 2002) ]. Legally relevant evidence is evidence that survives this balancing and is admissible.

*State v. Davis,* 318 S.W.3d 618, 640 (Mo. banc 2010).

### Analysis

■■■ Defendant's point alleges the trial court erred in overruling his objection to the admission of the big knife because "any probative value" that it had "was clearly outweighed by its prejudicial impact[.]" The point makes no claim of error regarding the admission of photographs of the big knife (State's exhibits 7 and 8) or testimony about the big knife.[9]

---

7. Defendant maintained that Victim got "a steak knife" "[f]rom the counter" and "came at" Defendant.

8. Lanig testified on cross-examination that it was "[p]robably" an accident that she got "hit" with the knife during the fight and she

did not think that Defendant meant to "hit" her with it.

9. Defendant's trial objection to the admission of the two photographs depicting the knife and subsequent preservation of the objection in his motion for new trial were not carried

Defendant argues that the Due Process Clause of the Fourteenth Amendment provides relief for the admission of "evidence that is so unduly prejudicial that it renders the trial fundamentally unfair," citing *Dawson v. Delaware,* 503 U.S. 159, 179, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). He also asserts that "[w]hen evidence of other crimes is erroneously admitted, it is presumed to be prejudicial[,]" citing *State v. Brooks,* 675 S.W.2d 53, 59 (Mo.App. S.D.1984), and "the State must overcome the presumption of prejudice by proving beyond a reasonable doubt that the error was harmless[,]" citing *State v. Miller,* 650 S.W.2d 619, 621 (Mo. banc 1983). He argues that, even if the big knife was within the "res gestae" of the offenses, "that does not mean that the [big] knife was not more prejudicial than probative."

In response, the State relies on *State v. Edwards,* 31 S.W.3d 73, 80 (Mo.App. W.D. 2000), which states the general rule that evidence will be admitted where it connects the defendant to the crime or sheds light upon a fact in issue. In *Edwards,* the defendant appealed the admission of two knives found at the scene of a stabbing where "the police did not really know which, if either, of the knives was the weapon used by the attacker." *Id.* at 81. One knife had blood on it and the other was in a sink with water. *Id.* at 82. The Western District could not "say on these facts that the knives had no probative value or had no connection with the crime." *Id.*

Here, the State contends that the big knife "was part of a continuing assault which took place when Defendant forced the wounded Victim at knifepoint to leave the house[.]" The State cites no authority supporting its position regarding a "continuing assault," but we need not decide whether Defendant was continuing his initial assault on Victim when he reentered the room with the big knife and threatened the occupants (or that it was relevant to show that the stabbing of Victim was not accidental) because—as the State also asserts—the admission of the big knife was cumulative to other admissible evidence.

■ "Generally, if other evidence admitted without objection sufficiently established essentially the same facts, the challenged evidence cannot create undue prejudice because it is simply cumulative of other properly admitted evidence." *State v. Dickson,* 337 S.W.3d 733, 744–45 (Mo.App. S.D.2011). The court in *Edwards* also found no prejudice in the admission of the two knives where

the only issue raised on appeal [wa]s whether the court erred in admitting the weapons in evidence as exhibits. [The detective] was permitted to testify about finding the knives without objection, and in fact defense counsel questioned him about them, and argued their irrele-

forward in his point relied on. "Issues that are reflected only in the argument section of the brief are not presented for appellate review." *State v. Nibarger,* 304 S.W.3d 199, 205 n. 5 (Mo.App. W.D.2009). "Issues not raised in the point relied on are not addressed on appeal." *Gooch v. State,* 310 S.W.3d 275, 279 n. 3 (Mo.App. S.D.2010) (appellant and appellee's expansion of the issue beyond the parameter of the point does not expand the issue addressed on appeal). Additionally, Defendant argues on appeal that "[t]he jury here was likely to assume that [Defendant] was

more likely guilty since he may have been threatening people with a different knife earlier in the evening." This contention is not included in a point relied on, and it is not preserved for appeal. *Id.* To the extent that Defendant may have intended two general references to "the evidence" of the big knife as including claims regarding State's exhibits 7 and 8 (the photographs) and testimony from witnesses regarding the big knife, such assertions were also omitted from the point relied on and were not developed in argument.

vance, and allowed the State to argue their relevance without objection, and [d]efendant does not claim on appeal that this was error.

31 S.W.3d at 82.

Here, before the big knife was offered as evidence, Lanig testified without objection that Defendant had threatened Hopper with it. And Defendant himself testified on direct examination that he had the big knife that night and had showed it to others.

The admission of the big knife was clearly cumulative to other unobjected-to evidence; its admission could not have unduly prejudiced Defendant. *See Dickson,* 337 S.W.3d at 744–45. The admission of State's exhibit 30 was not clearly against the logic of the circumstances and so unreasonable and arbitrary as to shock the judicial conscience. *See Smith,* 136 S.W.3d at 550. Defendant's point is denied, and the judgment of conviction and sentence is affirmed.

JEFFREY W. BATES and MARY W. SHEFFIELD, JJ., concur.